## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

|  |  |
|---|---|
| BLACK VOTERS MATTER FUND, and MEGAN GORDON, on behalf of herself and all others similarly situated,<br><br>    *Plaintiffs*,<br><br>    v.<br><br>BRAD RAFFENSPERGER, in his official capacity as Secretary of State of Georgia; DEKALB COUNTY BOARD OF REGISTRATION & ELECTIONS,<br><br>    *Defendants*. | CIVIL ACTION<br><br>FILE NO. 1:20-cv-01489-AT |

### SECRETARY OF STATE BRAD RAFFENSPERGER'S
### BRIEF IN SUPPORT OF HIS MOTION TO DISMISS

Secretary of State Brad Raffensperger (the "Secretary") submits this brief in support of his Motion to Dismiss ("Motion") Plaintiffs' Complaint, (Doc 1), filed April 8, 2020.

### INTRODUCTION

Plaintiffs ask this Court to be the first in the nation to strike a common and widespread electoral practice: requiring voters who *choose* to vote by mail to be responsible for their own postage.  Plaintiffs make this argument based on a wholly unsupported legal theory that relies on an erroneous extension of

two decisions that have never been applied in the manner suggested by the Plaintiffs.  More specifically, Plaintiffs invite this Court to hold that when a voter chooses to vote by mail and the state does not pay voters' postage, it constitutes a *per se* poll tax (Count I), or an unconstitutional burden on voting (Count II).  (Doc. 1 at 17-19.)  This Court should reject Plaintiffs' invitation to radically change Georgia and federal election law.

Proving no good deed goes unpunished, in an unprecedented decision, the Secretary decided to mail absentee ballot request forms  to each of the 6.9 million voters on Georgia's active voter roll.  The Secretary also procured a mail vendor to take the burden and expense of preparing, packaging, and mailing absentee ballots off of county election officials due to the expected increase in volume.  This move, which was intended to alleviate health concerns with in-person voting and ease voters' ability to cast their ballots during a global health crisis, was instead met with opposition over a decades old practice of having voters be responsible for the cost of a single $0.55 postage stamp when the voter chooses to vote by mail instead of delivering their ballot or voting in person.  Worse yet, the cost of the stamp is not even something imposed by or to the benefit of the Secretary of the State of Georgia.

But, this Court need not dismiss the complaint on the merits; there are several jurisdictional bases to grant the Secretary's Motion. First, Plaintiffs lack standing. Both plaintiffs fail to allege facts showing an imminent injury or that their purported injury is traceable to an act of the Secretary. Also, BVMF lacks organizational standing to be a party at all, and Gordon lacks standing to bring a claim under Count II (the *Anderson/Burdick* analysis). Second, the claims—at least as they relate to the November elections—are not ripe. Third, and on the merits, principles of federalism weigh in favor of granting the Motion, and the State's practice is neither a poll tax nor an unconstitutional burden on voting.

Plaintiffs' Complaint should further be dismissed on the merits as it fails to state a claim. Paying for the postage required by the United States Postal Service ("USPS") is not a state poll tax, and the minimal burden on the voter (who possesses numerous alternative voting options) does not outweigh the important concerns of state government. Accordingly, and for the reasons stated herein, Plaintiffs' claims warrant dismissal by this court.

## STATEMENT OF FACTS

Plaintiffs seek declaratory and injunctive relief requiring Defendants "to provide postage prepaid returnable envelopes for absentee ballots, as well as absentee ballot applications." (Doc. 1 at ¶ 9). Plaintiffs allege generally

that due to the COVID-19 pandemic, voting in person will endanger the health and safety of voters, so many voters will be forced to vote absentee by mail. (Doc. 1 at ¶¶ 2-3).  Without any support (even within the very affidavits filed by the Plaintiffs), Plaintiffs contend that "many lower-income voters do not have postage stamps." (Doc. 1 at ¶ 8).  However, Plaintiffs note that there is no legal or scientific impediment to their voting in person in June. Paragraph 21 of the complaint alleges that the "CDC has issued national guidance telling the public to avoid public gatherings until at least *May 15, 2020*." (Doc. 1 at 9 (emphasis added).)  Similarly, the federal government advised against unnecessary gatherings through *April 30, 2020*.  (*Id.*) Tellingly, the Plaintiffs cite to no authority suggesting that voting, in person, in *June* will be unsafe.

The complaint includes a one paragraph allegation about Plaintiff Black Voters Matter Fund ("BVMF").  (Doc. 1 at 5-6.)  BVMF claims its standing based on a diversion of resources theory: "Black Voters Matter must divert scarce resources away from voting education and away from other efforts … towards making sure that voters know about the postage requirement and how to obtain it."[1]  (*Id.* at 6.)  BVMF explains that one of its

---

[1] BVMF has not asserted claims (or standing) in the name of its members. *See generally, Ala. State Conference of NAACP v. City of Pleasant Grove*, 372

key purposes is to "work[] on increasing voter registration and turnout."  (*Id.*)
Similarly, Plaintiffs dedicate only a paragraph to Plaintiff Gordon, a DeKalb
County resident who possesses postage stamps but simply "does not want to
use her own postage." (*Id.*)  The Complaint contains *no allegations* of any
voter that actually cannot vote—either in person, by dropping off an election
ballot, or by mail.

## ARGUMENT AND CITATION TO AUTHORITY

The standard of review applied on a motion to dismiss is that a
complaint must "state a claim to relief that is plausible on its face," *Bell
Atlantic Corporation v. Twombly*, 550 U.S. 544, 570 (2007), and the complaint
must demonstrate "more than a sheer possibility that a defendant has acted
unlawfully." *Ashcroft v. Iqbal,* 556 U.S. 662, 677 (2009). Factual allegations
are presumed true, but not legal conclusions when they are "couched as []
factual allegation[s]." *Iqbal*, 556 U.S. at 678-79.  In addition to the complaint,
this Court may consider any matters appropriate for judicial notice.  *Tellabs,
Inc. v. Makor Issues & Rights, Ltd*., 551 U.S. 308, 322 (2007).  The Court may
not consider, however, "affidavits and other evidence produced on application
for a preliminary injunction." *Land v. Dollar*, 330 U.S. 731, 735 n. 4 (1947).

F. Supp. 3d 1333, 1337 (N.D. Ala. 2019) (distinguishing between associational
and resource-based standing).

Threshold issues of jurisdiction must be addressed prior to considering dismissal based on the merits or taking any other action. *Georgia Shift v. Gwinnett Cty.*, No. 1:19-cv-01135-AT, 2020 WL 864938 at *2 (N.D. Ga. Feb. 12, 2020).

## I.  Plaintiffs Lack Standing.

Standing is a threshold jurisdictional question. *Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 974 (11th Cir. 2005). "No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies." *Raines v. Byrd*, 521 U.S. 811, 818 (1997).  A party invoking federal jurisdiction bears the burden of establishing standing at the commencement of the action.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992); *see also Bischoff v. Osceola Cty., Fla.*, 222 F.3d 874, 878 (11th Cir. 2000) ("The party invoking federal jurisdiction bears the burden of proving standing.").  This burden must be "clearly" met.  *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (quoting *Warth v. Seldin*, 422 U.S. 490, 519 (1975)). In order to establish standing and invoke this Court's jurisdiction, Article III requires Plaintiffs to show three things:

> First, the plaintiff must demonstrate that she has suffered an "injury in fact"—an invasion of a legally protected interest that is both (a) concrete and

6

> particularized and (b) actual or imminent, not
> conjectural or hypothetical. Second, the plaintiff must
> show a causal connection between her injury and the
> challenged action of the defendant—i.e., the injury
> must be fairly . . . trace[able] to the defendant's
> conduct, as opposed to the action of an absent third
> party. Finally, the plaintiff must show that it is likely,
> not merely speculative, that a favorable judgment will
> redress her injury.

*Lewis v. Governor of Ala.*, 944 F.3d 1287, 1296 (11th Cir. 2019) (citing *Lujan*,

504 U.S. at 560-61 (internal citations and punctuation omitted)). "Failure to

satisfy any of these three requirements is fatal." *I.L. v. Alabama*, 739 F.3d

1273, 1278 (11th Cir. 2014).

Here, Plaintiffs have not alleged facts that clearly demonstrate a

particularized and imminent prospect of injury, nor have they alleged that

the Secretary has caused any injury.

A.    Injury in Fact.

Precedent dictates that plaintiffs in federal court must allege an injury

that is both concrete and imminent. *See generally* *Lujan*, 504 U.S. at 560-61.

Plaintiffs' is neither. Instead, Plaintiffs construct a strawman argument

based on a speculative false choice. They do not allege sufficient grounds for

standing.

Plaintiffs conclude that due to a worldwide pandemic, "voting in-person

is no longer a realistic option for most if not all voters," and as such, "[v]oters

are thus trapped into paying an unconstitutional poll tax just to cast a ballot by mail." (Doc. 1 at ¶¶ 2, 6.)  The complaint does not allege facts to support the idea that voters' choices are so limited.  While Plaintiffs did not allege the date of upcoming Georgia elections—(1) general primary on June 9; (2) potential runoffs on August 11; and (3) a general election on November 3— this Court may take judicial notice of election days.[2] *See Mills v. Green*, 159 U.S. 651, 658 (1895).  Each election is after key COVID-19 dates that Plaintiffs reference in their complaint.  The President has provided guidance that persons avoid unnecessary travel and groups over ten until April 30, 2020. (Doc 1 at 9.)  Plaintiffs also reference May 15, 2020, which is the last day that the CDC recommends avoiding public gatherings, and the last day of this Court's order precluding jury trials and grand juries.  (*Id.*)  Thus, there is no allegation that voters are being compelled or even advised to avoid voting in person due to the COVID-19 outbreak.  The Secretary does not doubt the sincerity of the Plaintiffs' concerns regarding the outbreak, but those concerns are personal and not mandated by law.

Under these circumstances, there is no cognizable injury for standing purposes.  The United States Constitution precludes alleged injuries from

---

[2] The election dates are posted on the Secretary's website and available at https://sos.ga.gov/admin/uploads/Timeline2.jpg.

being speculative (e.g., COVID-19 will prohibit in-person voting).  *See United States v. Hays*, 515 U.S. 737, 743 (1995) (concluding generalized grievances do not establish standing).  Standing alone, seeking to protect "an asserted interest in being free of an allegedly illegal electoral system" is insufficient to establish standing.  *Dillard v. Chilton Cty. Com'n*, 495 F.3d 1324, 1333 (11th Cir. 2007).

Instead, a cognizable injury must be based upon "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical."  *Lujan*, 504 U.S. at 560-61. Where a plaintiff seeks injunctive or declaratory relief, "the injury-in-fact requirement insists that a plaintiff 'allege facts from which it appears there is a substantial likelihood that he will suffer injury in the future.'" *Strickland v. Alexander*, 772 F.3d 876, 883 (11th Cir. 2014) (citation omitted).  An alleged injury must be "*certainly impending*" and not based on "'allegations of *possible* future injury.'"  *Ga. Republican Party*, 888 F.3d 1198, 1202 (11th Cir. 2018) (quotation omitted) (emphasis in original).  Put differently, the alleged injury must also be "concrete [or] 'de facto'; that is, it must actually exist." *Spokeo*, 136 S. Ct. at 1548.  As the Supreme Court has explained:

> When we have used the adjective 'concrete,' we have meant to convey the usual meaning of the term — 'real,' and not 'abstract.' Webster's Third New International Dictionary

> 472 (1971); Random House Dictionary of the English
> Language 305 (1967).   Concreteness, therefore, is quite
> different from particularization.

*Id.  See also City of Los Angeles v. Lyons*, 461 U.S. 95, 107 at n. 8 (1983) ("It is

the reality of the threat . . . not the plaintiff's subjective apprehensions . . .

the emotional consequences of a prior act simply are not a sufficient basis for

an injunction absent a real and immediate threat of future injury by the

defendant.")

Here, Plaintiffs have not alleged anything but a hypothetical injury,

namely that conditions may exist months from now that preclude them from

voting in person.  But Plaintiffs' subjective fears—which have not been

validated by guidance from the CDC or any other experts—are not sufficient

to establish an injury in fact.  This is fatal to the false choice the Plaintiffs

posit before the Court and upon which their entire legal theory relies.

Plaintiffs' argument, therefore, is really that their personal concerns

about COVID-19 will lead them to *choose* to vote absentee and by mail.  Their

choice, however, does not establish an injury for standing, because Plaintiffs

will not "suffer [an] injury in the future" because they will still have options

to vote that require neither postage nor coming in contact with individuals.

*Strickland*, 772 F.3d at 883.  Specifically, Plaintiffs can vote in person, or

they can vote by absentee and hand deliver their ballot to a county election

office (or a secure drop box in counties that have exercised the authority granted them by Ga. Comp. R. & Regs. r. 183-1-14-0.6-.14, the emergency rule adopted by the State Election Board during the current pandemic), or third parties may pay the postage.  Alternatively, the USPS has an explicit policy to deliver election mail that contains insufficient postage.  *Postal Bulletin 22391 2014 Election and Political Mail Update*, United States Postal Service (June 12, 2014), https://about.usps.com/postal-bulletin/2014/pb22391/html/front_cvr.htm.  Finally, Plaintiffs themselves are not even in need of these options.  While Plaintiffs' Complaint claims that "the postage stamp requirement imposes a serious burden that is unfathomable to wealthier people, Plaintiffs themselves allege that they either currently possess a sufficient  quantity of stamps or have ready access to them already.  (Doc. 1 at 5-6, 8.)

Put simply, no legal requirement forces voters to vote absentee.  Voters have numerous options in casting their ballot, including: using their own stamps, remitting their ballot without  using any postage  at all, personally delivering their absentee ballot, or voting in person.  Under these circumstances, Plaintiffs have neither a concrete injury nor an imminent one.

B.    <u>Traceability</u>.

Plaintiffs also cannot establish a causal link between their alleged injury and the Secretary or the State.  To establish the causation element of standing, or "traceability," a plaintiff must show that it is "likely that the injury was caused by the conduct complained of and not by the independent action of some third party not before the court." *Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*, 204 F. 3d 149, 154 (4th Cir. 2000) (citing *Lujan*, 504 U.S. at 561).  Such is not the case here for two reasons.

First, voters who must utilize a stamp choose to do so: The Secretary does not mandate a particular method of voting.  As discussed above, voters may avoid use of the mail all together by either (a) voting in person; or (b) dropping off an absentee ballot at any county election office (or other places where secure drop boxes have been established).  Thus, the only compulsion to utilize the United States mail arises from the personal decisions of the respective Plaintiffs themselves rather than any legal compulsion, and Plaintiffs' own decisions do not convey standing.  *See Clapper v. Amnesty, Intl USA*, 568 U.S. 398, 13 (2013) ("[W]e have been reluctant to endorse standing theories that require guesswork as to how independent decisionmakers will exercise their judgment.").

Second, if voters choose to vote by mail, at best, the USPS, not the Secretary, imposes, controls, and benefits from postage requirements (including waiving postage for official election mail).  This lack of control or authority precludes a finding of traceability.  *See Lewis*, 944 F.3d at 1299– 300 (lack of ability to enforce challenged act "counts heavily against plaintiffs' traceability argument."); *Dig. Recognition Network, Inc. v. Hutchinson*, 803 F.3d 952, 958 (8th Cir. 2015) ("[T]he causation element of standing requires the named defendants to possess authority to enforce the complained-of provision." (citations omitted)); *Okpalobi v. Foster*, 244 F.3d 405, 426 (5th Cir. 2001) (en banc) (holding that *Lujan's* traceability requirement is "entirely consistent with the long-standing rule that a plaintiff may not sue a state official who is without any power to enforce the complained-of statute.").

Indeed, Plaintiffs' theory is no different from a claim that the Secretary requires bus fare or the cost of gasoline for voters who drive to the polls. Even Plaintiffs do not take this unreasonable position, and for good reason. *See Ind. Democratic Party v. Rokita*, 458 F. Supp. 2d 775, 827 (S.D. Ind. 2006), aff'd sub nom.  *Crawford v. Marion Cty. Election Bd.*, 472 F.3d 949 (7th Cir. 2007), aff'd, 553 U.S. 181 (2008) ("It is axiomatic that "(e)lection laws will invariably impose some burden upon individual voters," . . . [but] the cost of time and transportation cannot plausibly qualify as a prohibited

13

poll tax . . .") (quoting *Burdick v. Takushi*, 504 U.S. 428, 433 (1992)).  Georgia

law sets forth *how* voters may cast a ballot; the voter choses among those

options, and the USPS may impose some cost associated with only one of

those options.

In sum, even if this Court were to ignore official USPS policy, the only

time a voter must pay postage is, first, if the voter chooses to vote absentee,

and second, if they decide to mail and not deliver their absentee ballot.  Any

alleged injury is, therefore, at least two steps removed from the Secretary.

Under these circumstances, the Secretary cannot reasonably be deemed to

have "caused" either the voter's decision or the USPS's postage requirement

(that, again, does not apply to official election mail).  This is fatal to

Plaintiffs' claims of standing.

C.    Plaintiff Black Voters Matter Fund has not established
        organizational standing.

When an alleged injury is prospective, organizational plaintiffs may

satisfy the injury requirement by showing "imminent harm." *Fla. State Conf.*

*of the NAACP v. Browning*, 522 F.3d 1153, 1160-61 (11th Cir. 2008). Here,

Plaintiff BVMF suggests that imminent harm is met under a "diversion of

resources" theory, (Doc. 1 at ¶13), which requires the threatened future

injury be a "realistic danger" that is not "merely hypothetical or conjectural."

*Id.* at 1161.  Plaintiff BVMF may not, however, satisfy the injury

requirement of standing by merely continuing their organizational mission as

they allege.

Specifically, Plaintiff BVMF claims that it will have to divert resources

from voter education and "other efforts to facilitate voting by mail," and

towards making sure that voters know about postage when mailing an

absentee ballot or absentee ballot application. (Doc. 1 at ¶ 13.)  This is not

diversion: educating voters about how to vote is voter education.  It is not the

cessation of an established purpose of BVMF.  *Compare Common*

*Cause/Georgia v. Billups*, 554 F.3d 1340, 1350 (11th Cir. 2009) (plaintiffs

had to stop regular "get out the vote" activities to help voters obtain photo

identification required by new law); *Ga. Latino Alliance for Human Rights v.*

*Governor of Ga.*, 691 F. 3d 1250, 1260 (11th Cir. 2012) (organization cancelled

citizenship classes to address inquiries about new immigration law).Further,

there is no change in the law that is requiring BVMF to change its education

message to voters.

D. <u>Plaintiff Megan Gordon, And The Putative Class, Lack Standing
To Assert Count II.</u>

Plaintiffs also seek to certify a class with Plaintiff Megan Gordon as

class representative. (Doc at 13.)  In order to establish standing as a class

representative, however, a plaintiff must herself meet individual standing requirements. *Goldstein v. Home Depot U.S.A., Inc.*, 609 F. Supp.2d 1340, 1349 (N.D. Ga. 2009). "Individual standing requirements must be met by anyone attempting to represent his own interest or those of a class." *Id*. If the named plaintiff fails to establish standing on her own, she may not seek relief on her own behalf or on that of a class. *Id*.

A plaintiff lacks standing to seek the injunctive relief requested in a proposed class action when the relief would be of no benefit to the Plaintiff. *Goldstein* at 1348 (relying on *Mack v. HH Gregg, Inc.*, 2008 WL 4082269, at 1 (S.D. Ind. Aug. 21, 2008) (holding plaintiffs lacked standing to seek injunctive relief because such relief would not actually benefit them); *McKenzie v. City of Chicago*, 118 F.3d 552, 555 (7th Cir. 1997) (reversing grant of injunctive relief that did not benefit named plaintiff where plaintiff class had not been certified)).

Here, in addition to the fact that nothing compels Plaintiff Gordon to utilize the mails to vote, she can articulate no burden under an *Anderson/Burdick* analysis, because she has stamps; she is just unwilling to use them. (Doc. 2-5 at ¶ 6.) Ms. Gordon has not alleged that she cannot vote without postage, either. This point alone is fatal to the putative class. *See Goldstein*, 609 F. Supp.2d at 1349. "Individual standing requirements must

be met by anyone attempting to represent his own interest or those of a class. If the named plaintiff seeking to represent a class fails to establish the requisite case or controversy, he may not seek relief on his behalf or on that of the class." *Lynch v. Baxley*, 744 F.2d 1452, 1456 (11th Cir. 1984). Consequently, the putative class claims as to Count II should be dismissed.

## II. Plaintiffs' Fundamental Right To Vote Claim Is Not Ripe And Warrants Dismissal Of Count II.

To the extent that Plaintiffs' claims rely on the existence of a pandemic, shelter-in-place order(s), or other public health aspect of the COVID-19 outbreak, the requests are not ripe, at least as to the General Election in November.[3] "Two considerations predominate the ripeness analysis: (1) 'the hardship to the parties of withholding court consideration' and (2) 'the fitness of the issues for judicial decision.'" *Ala. Power Co. v. U.S. Dep't of Energy*, 307 F.3d 1300, 1310 (11th Cir. 2002) (*quoting Abbott Labs. v. Gardner*, 387 U.S. 136, 149, 87 S. Ct. 1507, 1515 (1967))." *Browning*, 522 F.3d at 1164.

The Supreme Court has further identified three factors to consider in evaluating both the "hardship" and "fitness" prongs: "(1) whether delayed review would cause hardship to the plaintiffs; (2) whether judicial

---

[3] Because Count I alleges a *per se* violation of the Twenty-Fourth Amendment to the United States Constitution, the pandemic analysis and the State's ripeness defense appear to apply to Count II only.

intervention would inappropriately interfere with further administrative action; and (3) whether the courts would benefit from further factual development of the issues presented." *Ohio Forestry Ass'n v. Sierra Club*, 523 U.S. 726, 733, 118 S. Ct. 1665 (1998).  The "second and third of the Ohio Forestry factors—the need for factual development, and the interference with administrative procedures—both […] relate to the fitness of the plaintiffs' claims for adjudication at this time." *Pittman v. Cole*, 267 F.3d 1269, 1278 (11th Cir. 2001).

These concepts are similar to standing requirements addressed above and by this Court in *Georgia Shift*. 2020 WL 864938 at *3.  There, this Court wrote that allegations of "'possible future injury'" are not sufficient to satisfy Article III … Instead, '[a] threatened injury must be 'certainly impending' … and 'proceed with a high degree of immediacy, so as to reduce the possibility of deciding a case in which no injury would have occurred at all.'" *Id.* (*citing Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)).  This Court went on to conclude that "*[i]f*, or *when*, the County elections officials (or the State for that matter) fail to constitutionally carry out their duties to properly conduct and administer the 2020 elections, an action may be brought to seek a tailored remedy of an actual injury."  *Id.* at *6 (emphasis in original).

18

Each *Ohio Forestry* factor weighs in favor of finding Plaintiffs' claims not ripe, at least as they pertain to elections held subsequent to the June 2020 General Primary.  The need for additional factual development in this matter is obvious.  Hopefully, the public health emergency will be over by August or November, and Plaintiffs have not alleged anything specific to the contrary.  But, if this Court decides that Plaintiffs have shown an imminent injury, deciding to require postage *now* and for all future elections places the cart before the horse.  It requires the State to commit additional funds that are simply not available or being used to actually combat the pandemic.  Waiting for additional facts to develop is not only prudent as a matter of precedent, it is simply the right thing to do.  So viewed, Plaintiffs' assumptions that the health crisis will continue such that "most voters likely will not be voting in person" in November is not based on science or evidence; it is pure speculation unfit for consideration by this Court.  *See Pittman*, 267 F.3d at 1278.  (claims "are less likely to be considered 'fit' for adjudication when they venture beyond purely legal issues or when they require 'speculation about contingent future events.'") (quoting *Cheffer v. Reno*, 55 F.3d 1517, 1524 (11th Cir. 1995)).

Similarly, the State through either the Secretary or the State Election Board, not the Plaintiffs, is in the best position to issue new rules, policies

and regulations when and where needed to address the challenges COVID-19 may pose to Georgia's elections between now and November.  Tying the State's hands by preemptively requiring the allocation of these resources for a future election is counter to the ripeness principles laid out by the Supreme Court.  *See Wildlaw v. United States Forest Serv.*, 471 F. Supp. 2d 1221, 1237 (M.D. Ala. 2007) ("the purpose of the ripeness doctrine is 'to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties.'") (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 148–49 (1967)); *Pittman*, 267 F.3d at 1278 ("concern over interference with an agency's decision-making process before it has the opportunity to finalize its policies implicates the fitness of a case for adjudication.").

Finally, Plaintiffs face no "hardship" by the Court withholding consideration of Plaintiffs' claims relating to elections held after the June 2020 General Primary.  As it pertains to ripeness, a "hardship" exists only where a party would experience "adverse effects of a strictly legal kind." Such is not the case here.  The absentee voting procedures challenged by Plaintiffs do not "command anyone to do anything or to refrain from doing anything;

20

they do not grant, withhold, or modify any formal legal license, power, or authority; they do not subject anyone to any civil or criminal liability; they create no legal rights or obligations." *Ohio Forestry Ass'n, Inc.*, 523 U.S. at 733.  Plaintiffs are under no current obligation to do anything for elections held after June 2020, nor are Plaintiffs experiencing an ongoing hardship, legal or otherwise.  Any alleged injury for future elections is inchoate and speculative as to whether such an injury actually will exist when, for example, early voting begins in October 2020 for the November 2020 General Election.

Accordingly, Plaintiffs' claims beyond the June 2020 General Primary are not ripe for adjudication by this Court.  While Defendants deny that Plaintiffs are entitled to any of the injunctive relief they seek, at the very least, any order by the Court should be limited so as not to address future elections at this time.

## III. Plaintiffs Fail To State A Claim Upon Which Relief May Be Granted.

Principles of federalism preclude granting Plaintiffs' proposed relief. Moreover, and as shown in the Secretary's Brief in Opposition to Plaintiffs' Motion for Preliminary Injunction, Georgia policy neither imposes a poll tax nor an unconstitutional burden on voting.

A.    <u>Federalism.</u>

Plaintiffs ask this Court to decide whether the United States

Constitution mandates that states pay an individual's postage (when that

individual chooses to vote by mail) despite the Constitution reservation of

most authority regarding the integrity and efficiency of elections to states.

U.S. Const. Art I, § 4, cl. 1; *Storer v. Brown*, 415 U.S. 724, 730 (1974); *see also*

*Wexler v. Anderson*, 452 F.3d 1226, 1232 (11th Cir. 2006).  "[T]he framers of

the Constitution intended the States to keep for themselves, as provided by

the Tenth Amendment, the power to regulate elections." *Gregory v. Ashcroft*,

501 U.S. 452, 461–62 (1991) (quoting *Sugarman v. Dougall*, 413 U.S. 634, 647

(1973)); *Burdick*, 504 U.S. at 433 (voters do not have an absolute right to vote

in any way they choose).

Plaintiffs' claims against the Secretary are directly contrary to the

separation of powers between state and federal governments: "Although

federal courts closely scrutinize state laws whose very design infringes on the

rights of voters, federal courts will not intervene to examine the validity of

individual ballots *or supervise the administrative details of a local election*."

*Curry*, 802 F.2d at 1314 (emphasis added); accord *Powell v. Power*, 436 F.2d

84, 86 (2d Cir. 1970) ("Were we to embrace plaintiffs' theory, this court would

henceforth be thrust into the details of virtually every election, tinkering

with the state's election machinery, reviewing petitions, registration cards, vote tallies, and certificates of election for all manner of error and insufficiency under state and federal law").

Plaintiffs invite this Court to involve itself in the operation of elections to a degree that no court has to date.  This includes not only questions of payment of USPS postage, but also larger budget issues, the design of envelopes, and whether absentee ballots may be mailed either to the Secretary or county elections offices.  This is not a case where such intrusion is warranted or where the "very integrity of the electoral process" is brought into doubt.  *Curry*, 802 F.2d at 1316-17.  Nor is it a case involving "'patent and fundamental unfairness.'"  *Ga. Shift*, 2020 WL 864938 at *3 (citing *Browning*, 522 F.3d at 1183-84).  The complaint should be dismissed.

B.    Georgia Policy Is Neither A Poll Tax Nor An Unconstitutional Burden On Voting.

The Secretary adopts his arguments from his Brief in Opposition to Plaintiffs' Motion for Preliminary Injunction regarding why Plaintiffs have not stated a claim under either Count I or Count II of the complaint.  (*See* Doc. 51 at 18-31.)

## CONCLUSION

Plaintiffs seek nothing short of radical change to Georgia's elections, and they do so without a shred of binding legal precedent to support their policy aims.  On the merits, this is fatal.  But, this Court should not even reach the merits of Plaintiffs' complaint.  Plaintiffs lack standing, their claims are not ripe, and the "type of judicial oversight" demanded by Plaintiffs is inconsistent with our form of government.  The complaint should be dismissed.

This 23rd day of April, 2020.

*/s/ Josh Belinfante*
Vincent R. Russo
Georgia Bar No. 242628
vrusso@robbinsfirm.com
Josh Belinfante
Georgia Bar No. 047399
jbelinfante@robbinsfirm.com
Alexander Denton
Georgia Bar No. 660632
adenton@robbinsfirm.com
Brian E. Lake
Georgia Bar No. 575966
blake@robbinsfirm.com
Melanie Johnson
Georgia Bar No. 466756
mjohnson@robbinsfirm.com
Robbins Ross Alloy Belinfante Littlefield LLC
500 14th Street, N.W.
Atlanta, Georgia 30318
Telephone: (678) 701-9381
Facsimile: (404) 856-3250

Christopher M. Carr
Attorney General
Ga. Bar No. 112505
Bryan K. Webb
Deputy Attorney General
Ga. Bar No. 743580
Russell Willard
Sr. Asst. Attorney General
Ga. Bar No. 760280
Charlene McGowan
Asst. Attorney General
Ga. Bar No. 697316

**Georgia Department of Law**
40 Capitol Square SW
Atlanta, GA 30334
cmcgowan@law.ga.gov
Tel: 404-656-3389
Fax: 404-651-9325

*Counsel for State Defendant*

## **L.R. 7.1(D) CERTIFICATION**

I certify that this Brief has been prepared with one of the font and point selections approved by the Court in Local Rule 5.1(C). Specifically, this Brief has been prepared using 13-pt Century Schoolbook font.

*/s/ Josh Belinfante*
Josh Belinfante
Georgia Bar No. 047399

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have this day filed the within and foregoing **SECRETARY OF STATE BRAD RAFFENSPERGER'S BRIEF IN SUPPORT OF HIS MOTION TO DISMISS** with the Clerk of Court using the CM/ECF system, which automatically sent counsel of record e-mail notification of such filing.

This 23rd day of April, 2020.

<u>/s/ Josh Belinfante</u>
Josh Belinfante
Georgia Bar No. 047399