IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| BLACK VOTERS MATTER FUND and MEGAN GORDON, on behalf of herself and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> BRAD RAFFENSPERGER, in his official capacity as Secretary of State of Georgia; DEKALB COUNTY BOARD OF REGISTRATION AND ELECTIONS and all others similarly situated, <br><br> Defendants. <br> _____ | CIVIL ACTION FILE NO. <br> 1:20-CV-01489-AT |

## DEFENDANT DEKALB COUNTY BOARD OF REGISTRATION AND ELECTIONS' MOTION TO DISMISS AND INCORPORATED MEMORANDUM OF LAW IN SUPPORT THEREOF

COMES NOW, appearing specially, Defendant DeKalb County Board of Registration and Elections (the "DeKalb BRE") and, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), hereby moves the Court to dismiss with prejudice the claims against the DeKalb BRE in Plaintiffs' Complaint [DOC 1], showing the Court as follows:

1

## I.   INTRODUCTION

On April 8, 2020, Plaintiffs Black Voters Matter Fund ("BVMF") and Megan Gordon ("Gordon" and together with BVMF, "Plaintiffs") filed this lawsuit against the DeKalb BRE[1] and Brad Raffensperger, in his official capacity as the Secretary of State of Georgia (the "Secretary of State" and together with the DeKalb BRE, "Defendants") alleging that requiring electors to pay postage on absentee ballot applications ("absentee applications") and absentee ballots constitutes an unconstitutional poll tax and an undue burden on the fundamental right to vote, especially in light of the current health crisis caused by COVID-19 and the resulting increase in absentee voting. *See* Complaint [DOC 1]. To address these alleged infringements, Plaintiffs seek various equitable relief, including requiring Defendants to provide prepaid postage for absentee applications and ballots going forward. *Id.*

## II.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff BVMF is "a non-partisan civic organization . . . . [which] works on increasing voter registration and turnout, advocating for policies to expand voting rights and access." Complaint [DOC 1], ¶ 13. Plaintiff Gordon is "a registered

---

[1]   Plaintiffs seek class certification for all 159 county board of registrars and absentee ballot clerks in Georgia, with the DeKalb BRE as the class representative. *Id.*,  ¶¶ 43-46.  The Court has not yet considered or certified a defendant class in this action.  This motion to dismiss and memorandum in support thereof is filed only on behalf of the DeKalb BRE.

voter of DeKalb County [who] does not want to use her own postage stamps to mail in absentee ballots or applications because she believes that no one should have to pay money to exercise their right to vote." *Id*., ¶ 14. Defendant Secretary of State is "responsible for enacting elections statutes and routinely issues guidance to the county election officials of all 159 counties on various election procedures and requirements." *Id*., ¶ 15. Plaintiffs allege that Defendant DeKalb BRE "requires voters to affix postage on absentee ballots and applications, consistent with the SOS's guidance." *Id*., ¶ 16.

To vote by absentee ballot, a voter must first submit an absentee application via mail, fax, e-mail, or in-person. *Id.*, ¶ 25. After the absentee application is received by election officials and approved, the voter is mailed the absentee ballot itself. *Id*., ¶ 27. The absentee applications and absentee ballot packages sent to voters do not include postage prepaid return envelopes. *Id*., ¶¶ 26, 28.

Plaintiffs argue that the absence of prepaid postage return envelopes with absentee applications and absentee ballots constitutes a poll tax in violation of the Twenty-Fourth and Fourteenth Amendments, and an undue burden on the right to vote in violation of the First and Fourteenth Amendments.  *Id.*, ¶¶ 51, 55. For these reasons, Plaintiffs seek declaratory relief and a permanent injunction requiring Defendants to provide postage prepaid returnable envelopes for absentee ballots, as well as absentee applications. *Id*., ¶ 9.

### III.   ARGUMENT AND CITATION TO AUTHORITY

A district court must dismiss a complaint under Federal Rule of Civil Procedure 12(b)(1) if it lacks subject matter jurisdiction. Eleventh Amendment immunity and standing are jurisdictional issues that should be addressed prior to considering the merits of a case. *Curling v. Kemp*, 334 F.Supp.3d 1303, 1314 (N.D. Ga. 2018), *aff'd in part*, *Curling v. Sec'y of State of Georgia*, 761 Fed. Appx. 927 (11th Cir. 2019). As demonstrated below, Eleventh Amendment immunity and principles of standing divest this Court of subject matter jurisdiction over Plaintiffs' claims against the DeKalb BRE in this case.

### A. Plaintiffs' Claims are Barred by Eleventh Amendment Immunity.

The Eleventh Amendment bars claims against the state and against counties when acting as an "arm of the state." *Manders v. Lee*, 338 F.3d 1304, 1308 (11th Cir. 2003). "Whether a defendant is an 'arm of the State' must be assessed in light of the particular function in which the defendant was engaged when taking the actions out of which liability is asserted to arise." *Id.* The Eleventh Circuit considers four factors to determine whether an entity acts as an "arm of the State" in executing a particular function: "(1) how state law defines the entity; (2) what degree of control the State maintains over the entity; (3) where the entity derives its funds; and (4) who is responsible for judgments against the entity." *Id.* at 1309 (citations omitted).

A county board of elections acts as an arm of the state for the purposes of conducting elections in general, and as a result, Eleventh Amendment immunity attaches. *See Casey v. Clayton County*, No. 04-CV-00871, 2007 WL 788943 (N.D. Ga. Mar. 14, 2007). In *Casey*, the plaintiff brought an action against the Clayton County Board of Elections ("Board") alleging that she was not selected for the director of elections position because of her race and age. *Id.* at *1. Though the Court determined that the Board was not an arm of the state when hiring an elections director, the Court applied the *Manders* factors and explained why Eleventh Amendment immunity would attach to the Board in the management of elections: (1) the General Assembly created the Board, established minimum qualifications and certification requirements for its members, and disciplines its members, (2) the State fixes the duties of the Board, and (3) the county's control over the Board is attenuated. *Id.* at *8 ("for purposes of conducting elections in general, there can be little doubt that Eleventh Amendment immunity would attach").

The same analysis set forth in *Casey* applies to the DeKalb BRE. First, the General Assembly—not the County—created the DeKalb BRE and gave it "jurisdiction over the conduct of primaries and elections and the registration of electors in such county…," 2003 Ga. Laws p. 4200, § 1, codified in the Code of DeKalb County Georgia, Appendix B, §170, including powers and responsibilities

5

concerning: (1) the preparation for and conduct of elections, (2) the preparation for and conduct of primaries, (3) the registration of electors, and (4) the selection, appointment, and training of poll workers in elections.  2003 Ga Laws p. 4200 at §§ 9, 17; Code of DeKalb County Georgia, Appendix B, §§ 178, 186.  The General Assembly—not the County—even sets forth the number of members on the DeKalb BRE, member requirements, guidelines on how members are appointed or elected, and terms of service.  2003 Ga. Laws p. 4200 at §§ 2-4, 6-8; Code of DeKalb County Georgia, Appendix B, §§ 171-173, 175-177.

Second, the State maintains a high degree of control over the DeKalb BRE. The DeKalb BRE acts as the election superintendent and board of registrar for the County and must exercise the State powers granted to it and duties imposed on it. 2003 Ga. Laws p. 4200 at § 1; *see* O.C.G.A. §§ 21-2-70, 21-2-212.  The State requires training and certification of certain DeKalb BRE members and may discipline those who do not meet the State's requirements.  *See* O.C.G.A. §§ 21-2-100, 21-2-101 (designee of the board must complete training and certification programs or the board may be fined).  In contrast, the County's control over the DeKalb BRE is attenuated.  The DeKalb BRE is authorized and empowered to organize itself, determine procedural rules, and take action as is appropriate to the management of elections and registrations, as long as it does not conflict with State law.  2003 Ga. Laws p. 4200, § 13; Code of DeKalb County Georgia, Appendix B,

6

§ 182. Moreover, any rule promulgated by a DeKalb executive committee regarding primary conduct shall be null and void if in conflict with the DeKalb BRE's rules and regulations. 2003 Ga. Laws p. 4200 at § 10; Code of DeKalb County Georgia, Appendix B, § 179. Accordingly, State law heavily controls the DeKalb BRE's conduct and management of elections, while the County itself has little to no control over the DeKalb BRE's actions.

The third prong considers what entity funds the DeKalb BRE. State law guides this analysis as well. Under O.C.G.A. § 21-2-71, the governing authority must appropriate funds that the BRE "shall deem necessary for the conduct of primaries and elections in such county," including for poll officers, polling places, ballot supplies, maintenance of voting equipment, and other expenses. O.C.G.A. § 21-2-71. Likewise, local law requires the governing authority to pay for the salaries of election officials and other election-related expenses. *See* 2003 Georgia Laws p. 4200, §§ 12-18; Code of DeKalb County Georgia, Appendix B, §§181-187. However, the County's authority to approve funds for the DeKalb BRE does not mean that the County has any control over the DeKalb BRE. In fact, the Northern District of Georgia has questioned the extent of a county's budgetary authority in light of State laws regarding the conduct of elections. *Casey*, 2007 WL 788943, *8.

7

The final prong concerns who is liable for adverse judgments against the DeKalb BRE.  Assuming *arguendo* that the County is liable for a judgment against the DeKalb BRE, this does not change the analysis.  An entity may still act as an arm of the State for the purpose of Eleventh Amendment immunity even if the State is not liable for that entity's adverse judgment.  *See Pellitteri v. Prine*, 776 F.3d 777, 783 (11th Cir. 2015) ("As to the fourth factor, our precedent holds that liability by the state treasury is not determinative of whether a governmental entity should enjoy Eleventh Amendment immunity.") (quoting *Ross v. Jefferson Cty. Dept. of Health*, 701 F.3d 655, 660 (11th Cir. 2012)).

In sum, the County's connection to the DeKalb BRE is limited to the appropriation of funds, which is still guided mostly by State law requirements. The County has no control over the DeKalb BRE.  Instead, the DeKalb BRE promulgates its own organizational and procedural rules and must follow the guidelines as provided by State law.  It is clear here, and per the Northern District of Georgia, that the DeKalb BRE is an "arm of the State" while managing elections.  Because this litigation stems from allegations concerning the DeKalb BRE's management of absentee voting, Eleventh Amendment immunity applies to Plaintiffs' claims against the DeKalb BRE.[2]

---

[2] The *Ex Parte Young* exception to Eleventh Amendment immunity does not apply because Plaintiffs sued an "arm of the state" rather than the appropriate officials.

### B. Plaintiffs Lack Standing to Bring this Action.[3]

Under Article III of the United States Constitution, federal courts have jurisdiction to adjudicate only actual, ongoing cases or controversies between the parties which can be remedied by the court. *See Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477 (1990). An actual controversy must be extant at all stages of review, not merely at the time the complaint is filed. *Arizonans for Official English v. Arizona*, 520 U.S. 43, 67 (1997). Plaintiffs have the burden to establish standing sufficient to institute the court's jurisdiction to hear the case. *Spokeo, Inc. v. Robins*, 136 S.Ct. 1540 (2016); *Arcia v. Fla. Sec'y of State*, 772 F.3d 1335 (11th Cir. 2014). To determine whether a plaintiff has standing, the Court applies a three-prong analysis:

> First, the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest that is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of.... Third, it must be likely, as opposed to merely speculative, that the injury will

*Udick v. Florida*, 705 Fed.Appx. 901, 905 (11th Cir. 2017) ("Nor can Udick sue Florida under the *Ex parte Young* doctrine, as he argues, because that doctrine permits only suits against state officials, not the State itself."); *Wayne v. Fla. Dep't of Corrections*, 157 F.Supp.3d 1202, 1205 (S.D. Fla. 2016) (granting motion to dismiss based on Eleventh Amendment immunity where plaintiff sued only agency and did not sue official in an official capacity).

[3] In addition to the arguments set forth in this Section III.B, the DeKalb BRE incorporates by reference as if fully stated herein the arguments asserted in Section I (Standing) of Defendant Secretary of State Brad Raffensperger's Brief in Support of His Motion to Dismiss (the "SOS Brief") [DOC 67-1].

be redressed by a favorable decision.

*Curling*, 334 F. Supp. 3d at 1314 (quoting *United States v. Hays*, 515 U.S. 737, 742–43 (1995)).

> ### 1.   *Plaintiffs Have Failed to Allege a Sufficient Injury In Fact.*

Plaintiffs must show "an invasion of a legally protected interest that is sufficiently concrete and particularized rather than abstract and indefinite." *Kawa Orthodontics, LLP v. Sec'y, U.S. Dept. of the Treasury*, 773 F.3d 243, 246 (11th Cir. 2014) (citations omitted). As an organization, Plaintiffs must each show "more than simply a setback to the organization's abstract social interests…." *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982). Instead, standing necessitates that a defendant's actions impair an organization's ability to engage in its own projects by forcing the organization to divert its resources elsewhere. *Arcia*, 772 F.3d at 1341.

Plaintiff BVMF's only allegation of harm is a conclusory allegation that Defendants' conduct causes them to "divert scarce resources away from voter education and away from other efforts to facilitate voting by mail, towards making sure that voters know about the postage requirement and how to obtain it especially for those with less resources." Complaint [DOC 1], ¶ 13. This allegation, which fails to specify how such activities are different from BVMF's regular activities, is vague and conclusory and is not entitled to the presumption of truth. *See Iqbal*, 556

10

U.S. at 681.

Moreover, Plaintiffs fail to allege facts sufficient to show that the alleged harm is actual or imminent, rather than conjectural or hypothetical. To constitute injury-in-fact for purposes of standing, a plaintiff must establish that the threatened injury is "certainly impending," and "proceed with a high degree of immediacy, so as to reduce the possibility of deciding a case in which no injury would have occurred at all." *Georgia Shift, et al. v. Gwinnett Co., et al.*, No. 19-cv-1135, 2020 WL 864938, at *3 (N.D. Ga. Feb. 12, 2020) (quoting *Whitmore v. Arkansas,* 495 U.S. 149, 158 (1990), and *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 564 n.2 (1992)).  A plaintiff cannot rely on "a highly attenuated chain of possibilities" to satisfy the requirement that future injury is "certainly impending." *Clapper v. Amnesty Intern'l USA*, 568 U.S. 398, 407 (2013).

Here, Plaintiffs fail to point to (1) any specific diversion of resources away from DeKalb County voters, or (2) any individual voter in DeKalb County, including Plaintiff Gordon, who will be unable to vote as a result of the absence of a prepaid postage return envelope for absentee ballot applications or absentee ballots.  Instead, it appears that Plaintiff BMVF focuses its efforts on rural Georgia, and that Plaintiff Gordon has stamps, should she elect to vote by submitting an absentee ballot by mail.  See Complaint [DOC 1], ¶ 13 ("Black Voters Matter is particularly active in the rural Black Belt of Georgia, which

includes several counties in southwest Georgia."); *id*., ¶ 14 ("Plaintiff Megan Gordon . . . . does not want to use her own postage stamps to mail in absentee ballots or applications because she believes that no one should have to pay money to exercise their right to vote.")  "A generalized fear that injurious activity might occur is not sufficiently concrete to confer standing." *Georgia Shift*, 2020 WL 864938, at \*4; *see also Clapper*, 568 U.S. at 416 (holding that incurring costs as a reasonable reaction to a risk of harm is unavailing where the harm is not certainly impending).

Plaintiff BVMF also lacks associational standing. Under an associational-standing theory, "[a]n organization has standing to enforce the rights of its members 'when its member would otherwise have standing to sue in their own right, the interests at stake are germane to the organization's purpose, and neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Fla. State Conf. of the NAACP v. Browning*, 522 F.3d 1153, 1160 (11th Cir. 2008). "An organization must show that its members 'face a probability of harm in the near and definite future' to establish injury that is sufficient to confer standing to seek prospective relief." *Crittenden*, 347 F. Supp. 3d at 1336 (quoting *Browning*, 522 F.3d at 1160-61).

Plaintiff BVMF does not allege that is has members, let alone that any such members face a probability of harm sufficient to establish associational standing.

Accordingly, Plaintiff BVMF cannot establish associational standing. *See Jacobson v. Fla. Sec'y of State*, No. 19014552 (11th Cir. Apr. 29, 2020) (slip op. at 18). As a result, Plaintiffs have failed to allege facts sufficient to establish an injury in fact, and therefore lack standing to bring this action.

   2.   *Plaintiffs Cannot Show that Defendants Caused Their Alleged Injury.*

Plaintiffs must also show "a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not a result of the independent actions of some third party not before the court." *Lujan*, 504 U.S. at 560 (quotations and alterations omitted). Moreover, Plaintiffs' injuries cannot be self-inflicted. *Clapper*, 568 U.S. at 416.

Plaintiffs' alleged injuries are not fairly traceable to any act of the DeKalb BRE. Georgia law permits, but does not require, that absentee applications and absentee ballots can be submitted by mail. The United States Postal Service, rather than the DeKalb BRE, imposes any requirement (and has created an exception[4]) for postage to use the United States mail service to send absentee applications and

---

[4] The USPS has an explicit policy to deliver election mail that contains insufficient postage. Postal Bulletin 22391 2014 Election and Political Mail Update, United States Postal Service (June 12, 2014), https://about.usps.com/postal-bulletin/2014/pb22391/html/front_cvr.htm.

absentee ballots. Because Plaintiff BVMF's alleged injury cannot be traced to the

DeKalb BRE, Plaintiff BVMF lacks standing to assert the present claims against

the DeKalb BRE.

**C. Plaintiffs' Complaint Should Be Dismissed as their Claims Are Not Ripe and They Fail To State a Claim Upon Which Relief May Be Granted.**

Finally, the DeKalb BRE incorporates by reference as if fully stated herein

the arguments asserted Sections II (Ripeness) and III.A (Federalism) of the SOS

Brief [DOC 67-1].

## IV.   CONCLUSION

The Complaint against the DeKalb BRE should be dismissed with prejudice,

because this Court lacks subject matter jurisdiction over Plaintiffs' claim and

Plaintiffs have failed to plausibly state a claim against the DeKalb BRE upon

which relief may be granted.

Respectfully submitted this 30th day of April, 2020.

> LAURA K. JOHNSON
> DEPUTY COUNTY ATTORNEY
> Georgia Bar No. 392090
>
> /s/   *IRENE B. VANDER ELS*
> IRENE B. VANDER ELS
> ASSISTANT COUNTY ATTORNEY
> Georgia Bar No. 033663
>
> SHELLEY D. MOMO
> ASSISTANT COUNTY ATTORNEY

Georgia Bar No. 239608

*Attorneys for the DeKalb County Board of*
*Registration and Elections*

PLEASE ADDRESS ALL
COMMUNICATIONS TO:
Irene B. Vander Els
Shelley D. Momo
DeKalb County Law Department
1300 Commerce Drive, 5th Floor
Decatur, GA 30030
(404) 371-3011

## CERTIFICATE OF SERVICE AND CERTIFICATE OF COMPLIANCE
## WITH <u>LOCAL RULE 5.1</u>

I hereby certify that I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system (which document was prepared in Times New Roman font, 14-point type, one of the font and point selections approved by the Court in N.D. Ga. L.R. 5.1(C)), which will automatically send e-mail notification of such filing to the following opposing counsel of record:

PERSONS SERVED:

Dale E. Ho
Sophia Lin Lakin
American Civil Liberties Union Foundation-NY
18th Floor
125 Broad St.
New York, NY 10004

Sean Young
ACLU of Georgia Foundation
1100 Spring St. NW
Suite 640
P.O. Box 77208
Atlanta, GA 30309

Charlene S. McGowan
Kaufman & Forman, P.C.
Building 800
8215 Roswell Rd.
Atlanta, GA 30350

Alexander Fraser Denton
Brian Edward Lake
Joshua Barrett Belinfante
Melanie Leigh Johnson

Vincent Robert Russo, Jr.
Robbins Ross Alloy Belinfante Littlefield LLC
500 14th Street, N.W.
Atlanta, GA 30318

     This 30th day of April, 2020.

*/s/     IRENE B. VANDER ELS*
IRENE B. VANDER ELS
ASSISTANT COUNTY ATTORNEY
Georgia Bar No. 033663
