IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| BLACK VOTERS MATTER FUND, and MEGAN GORDON, on behalf of herself and all others similarly situated, | : : : : : | |
| Plaintiffs, | : : | |
| v. | : : | |
| BRAD RAFFENSPERGER, in his official capacity as Secretary of State of Georgia, and DEKALB COUNTY BOARD OF REGISTRATION & ELECTIONS, and all others similarly situated, | : : : : : : : : | CIVIL ACTION NO. 1:20-cv-01489-AT |
| Defendants. | : | |

## **ORDER**

Plaintiffs Black Voters Matter Fund and Megan Gordon filed this putative class action against the Georgia Secretary of State and the DeKalb County Board of Registration & Elections (on behalf of all similarly situated county boards of elections) alleging that Defendants have unconstitutionally infringed the rights of Georgians to vote by requiring voters to pay for their own postage to submit absentee ballot applications and absentee ballots.

Plaintiffs contend that the postage requirement is a poll tax in violation of the Twenty-Fourth and Fourteenth Amendments and an unjustifiable burden on the right to vote in violation of the First and Fourteenth Amendments. Plaintiffs

seek emergency relief, in the form of (a) a declaratory judgment that the requirement that voters affix their own postage to mail-in absentee ballots and mail-in absentee ballot applications is unconstitutional; and (b) a preliminary and permanent injunction mandating that Defendants provide prepaid postage returnable envelopes for absentee ballots and applications. Currently pending before the Court is Plaintiffs' Motion for Preliminary Injunction [Doc. 2].

## I. Procedural History

Plaintiffs filed their Motion along with the Complaint on April 8, 2020. The Court initially ordered Defendants to file a response to the Motion by Friday, April 17, 2020 at 2:00 PM, but later extended that deadline at Defendant Raffensperger's request until Monday, April 20, 2020 at noon. The Court also scheduled a hearing on the Motion for Preliminary Injunction for Friday, April 24, 2020.

On April 17, 2020, the Court received a letter from counsel for the Secretary of State indicating that the State's vendor would begin mailing out absentee ballots on Tuesday, April 21, 2020. (Doc. 40.) The Court held an emergency telephone conference with counsel that afternoon. Later that day, in light of the completed status of ballot printing and the State's imminent mailing of ballots to absentee ballot applicants, Plaintiffs filed a Second Supplemental Brief withdrawing in part their request for an order mandating that Defendants send all absentee ballots applications and absentee ballots with return postage

prepaid for the June 2020 Election but instead proposing alternative remedies for that election. (Doc. 44.)

The Court held a hearing on the Motion by video conference on April 24, 2020. (Doc. 72.) The Court heard testimony from Cliff Albright, the Executive Director of Plaintiff Black Voters Matter Fund, and Kevin Rayburn, the Deputy Elections Director and Deputy General Counsel for the Georgia Secretary of State's office. The Court took the matter under advisement after the hearing.

## II.   Discussion

The Court has carefully considered all of the evidence of record, including the live testimony and affidavits, in light of Plaintiffs' request for relief for the June 2020 election.[1] The Court finds for the reasons that follow that the remedies proposed for the June 2020 election are not realistic or implementable, especially in the current time frame, and therefore **DENIES** injunctive relief as requested for the June 2020 election only. The Court reserves judgment on whether injunctive relief is appropriate as to future elections, including the August 2020 runoff and the November general election, but issues this Order now so the parties may proceed to handle their election activities in the immediate time frame ahead accordingly.

### A.   Legal Standard

To support a preliminary injunction, a district court must determine whether the evidence establishes: (1) a substantial likelihood of success on the

---

[1] The Court has also read and considered all of the Parties' post-hearing filings. (Docs. 76–78.)

merits; (2) a substantial threat of irreparable injury if the injunction were not granted; (3) that the threatened injury to the plaintiff outweighs the harm an injunction may cause the defendant; and (4) that granting the injunction would not be adverse to the public interest. *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir. 1998).  "A request for equitable relief invokes the district court's inherent equitable powers to order preliminary relief . . . in order to assure the availability of permanent relief." *Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 987 (11th Cir. 1995); *Federal Trade Commission v. United States Oil and Gas Corp.*, 748 F.2d 1431, 1433–34 (11th Cir. 1984) (holding that a district court may exercise its full range of equitable powers, including a preliminary asset freeze, to ensure that permanent equitable relief will be possible).  However, a preliminary injunction "is an extraordinary and drastic remedy not to be granted unless the movant clearly established the 'burden of persuasion' as to the four prerequisites." *McDonald's Corp.*, 147 F.3d at 1306 (internal citations omitted).

**B.   Plaintiffs' Proposed Alternative Remedies for June 2020 Primary**

In their April 17, 2020 Second Supplemental Brief, Plaintiffs withdrew their request for preliminary injunctive relief in the form of an order mandating that Defendants send all absentee ballots applications and absentee ballots with return postage prepaid for the June 2020 Election. (Doc. 44.) They instead proposed alternative remedies. Plaintiffs have maintained their original request

for complete injunctive relief for the August 2020 Runoff and November 2020 General Elections.

As a baseline request for the June 2020 Primary Election, Plaintiffs request an injunction or written confirmation from Defendants allowing organizations to distribute stamps to voters without running afoul of election regulations. (Doc. 44 at 2.) In addition to this request, Plaintiffs propose three alternative remedies to address the alleged poll tax which include the following: (1) including free postage stamps or business reply mail postage sticker labels with absentee ballots and separately sending stamps or stickers to those voters who have already received their absentee ballots; (2) creating an online link to facilitate voters' obtaining postage prepaid envelopes; and (3) mandating that each county set up a secure drop box at each post office location in the county. (Doc. 44 at 4–8.)

The Court believes that Plaintiffs' original request for injunctive relief, requiring prepaid return envelopes for all absentee ballot applications and mail-in absentee ballots, presents an important question necessitating prompt review. However, as the Court explained above, the Court will confine this Order to the June 2020 Primary Election. The Court therefore focuses on the claims and proposed alternative relief set forth by the Plaintiffs in their Second Supplemental Brief. (Doc. 44.) As discussed below, the Court finds that Plaintiffs have not met their heavy burden of showing an entitlement to their proposed alternative preliminary injunctive relief for the June 2020 election.

Normally, a court must consider four factors in determining whether to grant a request for injunctive relief. Typically, the first and foremost issue considered is Plaintiffs' likelihood of success on their claims. *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1232 (11th Cir. 2005) (citing *Gonzalez v. Reno*, No. 00–11424–D, 2000 WL 381901 at *1 (11th Cir. April 19, 2000). However, in the interest of efficiently addressing issues relating to the June 2020 Election right now, given the complexity of the legal claims at issue, the Court begins by discussing the last two legal factors that must be considered in determining the appropriateness of granting Plaintiffs' request for injunctive relief. These latter two factors guide denial of relief at this time, given the status of printing and postal transmission of the absentee ballots by the State's vendor and the Secretary of State's Office.  The Court considers these last two factors "in tandem . . . as the real question posed in this context is how injunctive relief at this eleventh-hour would impact the public interest in an orderly and fair election, with the fullest voter participation possible. . . ." *Curling v. Kemp*, 334 F. Supp. 3d 1303, 1326 (N.D. Ga. 2018), *aff'd in part, appeal dismissed in part*, 761 F. App'x 927 (11th Cir. 2019); *see also Purcell v. Gonzalez*, 549 U.S. 1, 4 (2006)).

As the Court noted above, Plaintiffs requested an injunction or written confirmation from Defendants allowing organizations to distribute stamps to voters without running afoul of election regulations. (Doc. 44 at 2.) Defendants were unwilling to make such a stipulation at the hearing, insisting that Plaintiffs were "just asking for the state to follow the law." (Transcript of Apr. 24, 2020

6

Hearing ("Tr.") at 112, Doc. 75.) The "law" in question is the State Election Board's official interpretation of O.C.G.A. § 21-2-570's ban on gifts for registering as a voter. The official State Board interpretation in its Rules and Regulations expressly permits a third party to furnish postage to a voter for submitting an absentee ballot application and the mail-in absentee ballot. Ga. R. & Reg. 183-1-19-.01.[2] The Court therefore views the Plaintiffs' underlying concern and request as adequately addressed by the Secretary of State and State Board of Elections, and no further Order by the Court is necessary on Plaintiffs' request.

The Court now considers Plaintiffs' three proposed alternative remedies for the June 2020 Election, outlined above.

First, the Court heard evidence at the hearing that the number of absentee ballot applications received by the state as of April 24, 2020 was over "760,000 and still coming in strong," that the state has already "started mailing out absentee ballots on April 21st," and that as of April 24th, "approximately 220,000 have gone out."[3] (Tr. at 87, 90.) The alleged "per se" claim of irreparable injury

---

[2] The rule provides in full:
> In the interpretation of O.C.G.A. Section 21-2-570, the State Election Board has determined that the prohibition contained therein against the giving or receiving, offering to give or receive, or participating in the giving or receiving of money or gifts for the purpose of registering as a voter or voting does not include the provision of postage to a person solely for the purpose of (1) mailing a voter registration application in order for such person to register to vote or (2) mailing an absentee ballot application or an absentee ballot that was voted and sealed by such person in order for such person to vote.

[3] Today, the Atlanta Journal Constitution reports that over one million Georgia voters have requested absentee ballots as of April 30th. *See* Mark Niesse, *Over 1 million Georgia voters request absentee ballots*, Atlanta J.–Const. (Apr. 30, 2020), https://www.ajc.com/news/state--regional-govt--politics/over-million-georgia-voters-request-absentee-ballots/gfEtMitQBrE34Gj7zEmtFO/.

7

for payment of a poll tax has already been visited upon such voters. Therefore, any injunction requiring providing postage would necessarily benefit only some portion of the electorate. If the Court were to grant Plaintiffs' requested relief, some voters would receive the benefit of State or County funded postage while those who had already mailed in their applications and/or ballots would not.

The State has argued that providing postage to some voters would run afoul of the Supreme Court's decision in *Bush v. Gore,* 531 U.S. 98, 104-05 (2000). In that case, the Court held that "[t]he right to vote is protected in more than the initial allocation of the franchise. Equal protection applies as well to the manner of its exercise. Having once granted the right to vote on equal terms, the State may not, by later arbitrary and disparate treatment, value one person's vote over that of another. . . ." *Id.* at 104-05 (internal citations omitted). While the Court does not agree that the relief requested to address the current circumstances actually "value[s] one person's vote over that of another," the relief could yield a measure of disparity in postage relief as a practical matter, that would touch on the Court's weighing of the public interest factor for the June 2020 Election. *Cf. id.* at 105. To address this disparity, Plaintiffs suggest that the Court mandate adding prepaid postage to unsent ballots and sending stamps to those who have already received ballots. But this makes no practical sense in the context of the concrete circumstances here. It would effectively double the cost to the State, as the State would have to pay for the postage on the envelopes containing postage and print some form of an explanation regarding the

8

provision of these stamps. The Secretary of State's Office estimated the cost for prepaying postage would "range between $450,000 and $4.2 million" for this election at a time of other significant state fiscal concerns. (Rayburn Decl. ¶ 17.)

Equally and perhaps more important, this strategy runs the risk that at least some voters will delay prompt casting of their absentee ballots while awaiting delivery of postage. As noted, the arrival of a new envelope transmitted by the Secretary of State's Office containing postage would also require further instruction and explanation — and cause some manner of voter confusion. (For instance, a voter may wonder, "Will my ballot be valid and counted if I already delivered or plan to deliver the ballot and won't use the stamps provided?") As shown by the infamous Florida 2000 election "hanging chads" and Georgia's own mishaps[4] in failing to transmit the inner white envelopes required by state law[5] for confidential transmission of ballots (a white envelope requirement explicitly referenced in the envelope instructions), shifting or defective voting communications provide a host of opportunities for producing voter confusion.

Likewise, the proposed solution of establishing a website to obtain free postage is undercut by Plaintiffs' own argument that many economically vulnerable voters do not have Internet access, putting aside the administrative cost of developing such a system or timely effectuation of stamp requests of an

---

[4] Mark Niesse, *Georgia absentee voting instructions to be corrected*, Atlanta J.–Const. (Apr. 28, 2020), https://www.ajc.com/news/state--regional-govt--politics/georgia-absentee-voting-instructions-corrected/kzkuKmLufxIRcwIW0oEzCN/.
[5] O.C.G.A. § 21-2-384(b).

unknown volume at this moment. The proposed remedy of mandating drop boxes at all post offices, absent provisions for funding security cameras for this large volume of boxes and regular daily pick-up of ballots from the boxes, additionally carries the risk of virus exposure if the boxes are located inside the post offices. Plaintiffs argue that the perfect cannot be the enemy of the good. The Court concurs in principle. But a remedy which calls for quick implementation of a systemic remedy requiring coordination with 159 counties and approximately 600 post offices,[6] electronic security, employee follow-up and funding in the immediate context where public election offices and volunteers are stretched to the limit in this pandemic crisis, may well not be reasonably effected in the five weeks ahead.[7]

A mandate for the immediate implementation of the proposed remedy targeted at the June 9th Election thus may consume significant human and financial resources but not effectively prevent the alleged threatened irreparable injury. This makes the Court's weighing of the balance of hardships and rights asserted more difficult. The Court does not hold that the purported costs to the state necessarily outweigh the burden to Plaintiffs in the abstract, but instead merely observes that under the circumstances, entering Plaintiffs' proposed half

---

[6] *See* USPS website, https://webpmt.usps.gov/pmt011.cfm (last visited April 30, 2020), identifying, 605 open post offices in Georgia (with postal offices discontinued subtracted).

[7] On the other hand, a more tailored version of the proposed remedies conceivably could be appropriately implemented in the future to bolster voters' effective exercise of the absentee ballot right during a period when a swath of voters are still impacted and limited by the COVID-19 public health crisis.

measures which pose a variety of challenges and administrative constraints so close to the election date would not be justified in light of the costs and the associated issues of voter confusion and election personnel resources the Court has discussed.

Indeed, the Supreme Court has recognized that there are special considerations involved with impending elections and the critical issues at stake. In *Reynolds v. Sims*, the Court stated:

> [O]nce a State's [election-related] scheme has been found to be unconstitutional, it would be the unusual case in which a court would be justified in not taking appropriate action to insure that no further elections are conducted under the invalid plan. However, under certain circumstances, such as where an impending election is imminent and a State's election machinery is already in progress, equitable considerations might justify a court in withholding the granting of immediately effective relief in a legislative apportionment case, even though the existing apportionment scheme was found invalid. In awarding or withholding immediate relief, a court is entitled to and should consider the proximity of a forthcoming election and the mechanics and complexities of state election laws, and should act and rely upon general equitable principles.

377 U.S. 533, 585 (1964). *Reynolds* is not an inviolable commandment against pre-election injunctions. In their Second Supplemental Brief, Plaintiffs acknowledge "that the public interest would not be served by maintaining their request for injunctive relief as originally stated with respect to the June election." (Doc. 44.) This is plainly correct. The Court appreciates Plaintiffs' candor but cannot agree that the proposed alternative remedies go significantly further in serving the public interest at the moment. Entering an order requiring the State

to alter the absentee ballot envelopes regarding postage instructions[8] or sending out postage now, when ballots have already been mailed to hundreds of thousands of voters, runs the risk that voters awaiting new instructions do not timely submit their ballots.

Finally, while this by no means cures the alleged irreparable injury, all parties agree that Plaintiffs and similar voting rights groups are permitted to distribute stamps to voters. And the Court has expressly recognized that Ga. R. & Reg. 183-1-19-.01 allows third parties, such as the Plaintiff organization, to assist voters by the provision of stamps solely for the purpose of transmission of their absentee ballot applications and ballots.

For the above reasons, the Court need not reach the remaining factors for injunctive relief at this time, including the question of whether Plaintiffs have shown a substantial likelihood of success on the merits. But just as the virus itself does not appear to be going away in the immediate future, neither may this issue.

## III. Conclusion

The Court has denied relief as to the June 2020 Primary Election, but it would benefit the public for the Parties to immediately discuss means to reach the goal of eliminating barriers to voting posed by the COVID-19 pandemic. It appears that the instructions to absentee voters are undergoing changes as a result of the fact that voters have been provided with folded pieces of paper in

---

[8] However, the Court notes that the State has now indicated that the white envelope voting instructions will have to be changed going forward in any case. Niesse, *supra*. note 4.

lieu of the standard inner secrecy envelope required by state law that the Secretary of State and DeKalb County previously represented to the Court would be provided to all voters. O.C.G.A. § 21-2-384(b); (Doc. 51 at 5; *see also* Docs. 54, 61); *Niesse, supra.* note 4. It would be appropriate under the circumstances for Defendants' counsel to discuss with Plaintiffs' counsel whether adding an instruction regarding postage to the revised instructions would be a workable solution. For example, such an instruction might state that if a voter is unable to obtain postage, he or she should contact his or her local board of elections regarding other alternatives for delivery of the ballot. Furthermore, Defendants should consider whether O.C.G.A. § 21-2-385(a)'s provision for allowing in-person delivery of ballots by family or household members in the COVID-19 pandemic circumstances could be construed to permit delivery of ballots by family members of persons particularly susceptible to COVID-19 because of underlying conditions or age (60 plus).[9]

For the foregoing reasons, the Motion for Preliminary Injunction [Doc. 2], as modified by Plaintiff' supplemental submissions, is **DENIED IN PART** as to the June 2020 Election only.

---

[8] The State Board of Elections is authorized to issue such emergency rules or policies. *See, e.g.*, SEB Emergency Rule 183-1-14-0.6-.14 (citing O.C.G.A. § 21-2-31).

**IT IS SO ORDERED** this 30th day of April, 2020.

_____
**Honorable Amy Totenberg
United States District Judge**