IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| BLACK VOTERS MATTER FUND, MEGAN GORDON, PENELOPE REID, and ANDY KIM, on behalf of themselves and all others similarly situated, | ) ) ) ) ) ) | Civil Action No.: 20-cv-1489-AT |
| Plaintiffs, | ) ) | Complaint-Class Action |
| vs. | ) ) ) | |
| BRAD RAFFENSPERGER, in his official capacity as Secretary of State of Georgia; DEKALB COUNTY BOARD OF REGISTRATION & ELECTIONS; ANTHONY LEWIS, SUSAN MOTTER, DELE LOWMAN SMITH, SAMUEL E. TILLMAN, and BAOKY N. VU, in their official capacities as Members of the DeKalb County Board of Registration & Elections; and ERICA HAMILTON, in her official capacity as Director of Voter Registration and Elections, and all others similarly situated, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) ) | |

## AMENDED COMPLAINT

### Nature of the Case

1.      This case is about protecting American democracy at a time when we are facing a worldwide pandemic. The Governor has declared a state of emergency and ordered everyone to stay at home unless absolutely necessary to go outside. The infection and death count is ticking upwards each day.

2.      Under these circumstances, voting in-person is no longer a realistic option for most if not all voters. Voting in-person unnecessarily endangers the health and safety of voters and anyone they come into contact with well after voting. If this weren't enough, voting in-person has become even harder as poll workers across Georgia (many who are elderly) are quitting in droves to limit the risk of potentially deadly exposure.

3.      Under these circumstances, many voters have reasonably decided to vote from the safety of home by casting mail-in absentee ballots. With the ongoing pandemic, the number of mail-in votes is expected to skyrocket this year at record-breaking levels. Voting by mail may become the new normal as more and more people vote by mail for the first time. Given the surge of voters who will be casting mail-in absentee ballots this year, it is all the more critical that all unconstitutional barriers to mail-in voting be removed as soon as possible.

4.      Though the stakes are high, the legal claim is simple. The United States Constitution (through the Twenty-Fourth and Fourteenth Amendments) bans poll taxes. Georgia election officials require voters to use their own postage when submitting mail-in absentee ballots and applications. Postage costs money. Thus, Defendants have imposed a poll tax in violation of the Constitution.

5.      A poll tax remains unconstitutional even if there are free alternatives to voting, such as voting in-person. But the "option" of voting in-person does not really exist because of the pandemic. And voting in-person is already nearly impossible for certain voters that are elderly, disabled, or out of town.

6.      Voters are thus trapped into paying an unconstitutional poll tax just to cast a ballot by mail. To be sure, many wealthy and middle-class voters see little problem paying 55 cents to avoid voting in person. While unconstitutional, the postage requirement barely fazes them.

7.      But this case is not really about middle-class or wealthy people. This case is about marginalized voters who come from communities who have historically faced over a century of racist voter suppression, including the use poll taxes to disenfranchise voters, and who rightfully refuse to pay another cent for the right to vote. This case is about voters who have always voted in-person to honor their Black ancestors who have fought and died for the right to vote, but now

3

cannot. This case is about voters who live on shoestring budgets and lack access to all the resources such as time, money, and transportation that wealthier people take for granted. This case is about voters who don't have Internet access, smartphones, email addresses, printers, or scanners in a home office where they can download, print, scan, and e-mail absentee ballot applications to avoid paying postage. This case is about lower-income voters who have overlapping work and childcare responsibilities and cannot just skip work or family obligations to buy stamps at a post office just to vote.

8.     For these vulnerable voters, the postage stamp requirement imposes a serious burden that is unfathomable to wealthier people. Many lower-income voters do not have postage stamps. They no longer need to use them or have never needed to use them. They cannot be expected to needlessly expose themselves to the pandemic just to get stamps in order to vote. That assumes they can even get there, when many do not have cars, and ride-sharing and public transportation is non-existent in rural parts of the state. Voters without Internet access or a credit card cannot buy stamps online, and if they do, they must unnecessarily purchase an unaffordable book of stamps (about $10) because they aren't allowed to buy just one. Making matters worse, voters are left guessing about how much postage to use because ballots vary in size and weight. So they must add potentially

4

unnecessary extra postage just to be safe from the risk of being disenfranchised. It hardly bears mention that few people actually own stamp scales.

9.     For these reasons, Plaintiffs seek declaratory relief and a permanent injunction requiring Defendants to provide postage prepaid returnable envelopes for absentee ballots, as well as absentee ballot applications. Defendants know how to do this, because the law already requires them to provide postage prepaid returnable envelopes for other purposes. See O.C.G.A. § 21-2-233(b); O.C.G.A. § 21-2-234(c).

10.     Plaintiffs also seek a preliminary injunction that would protect voters from paying poll taxes in this year's elections, particularly the November general election.

## JURISDICTION AND VENUE

11.     This is a civil and constitutional rights action arising under 42 U.S.C. § 1983 and the Twenty-Fourth and Fourteenth Amendments to the United States Constitution. This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343.

12.     Venue in this Court is proper under 28 U.S.C. § 1391 because the events giving rise to Plaintiffs' claims arose in this district and division. The Defendant Secretary of State, and the proposed Defendant class representative

DeKalb County Board of Voter Registration and Elections are both located within this district and division.

## PARTIES

13.    Plaintiff Black Voters Matter Fund is a non-partisan civic organization whose goal is to increase power in communities of color. Effective voting allows a community to determine its own destiny. Communities of color often face barriers to voting that other communities do not, so Plaintiff focuses on removing those barriers. Black Voters Matter works on increasing voter registration and turnout, advocating for policies to expand voting rights and access. Black Voters Matter is particularly active in the rural Black Belt of Georgia, which includes several counties in southwest Georgia. Plaintiff focuses on those communities because they tend to be the most neglected, and have higher rates of poverty than other places. Black Voters Matter must divert scarce resources away from voter education and away from other efforts to facilitate voting by mail, towards making sure that voters know about the postage requirement and how to obtain it especially for those with less resources.

14.    Individual Plaintiff Megan Gordon is a registered voter of DeKalb County. She, like other voters who would be similarly situated, cannot vote in-person because of the COVID pandemic. Even absent the pandemic, she and other

voters must still choose between paying a poll tax or voting in-person, which is nearly impossible for many who are elderly, disabled, or out of town, while being materially burdensome for others. She does not want to use her own postage stamps to mail in absentee ballots or applications because she believes that no one should have to pay money to exercise their right to vote.

15.    Individual Plaintiff Penelope Reid is a registered voter of Gwinnett County. She, like other voters who would be similarly situated, cannot vote in-person because of the COVID pandemic. Even absent the pandemic, she and other voters must still choose between paying a poll tax or voting in-person, which is nearly impossible for many who are elderly, disabled, or out of town, while being materially burdensome for others. She does not want to use her own postage stamps to mail in absentee ballots or applications because she believes that no one should have to pay money to exercise their right to vote.

16.    In addition, Plaintiff Reid currently has to vote by mail even if there were no pandemic. She is 80 years old, has knee problems and swelling in her ankles, which makes it hard to stand up. She cannot stand for long periods of time, so she is not able to wait in line at the polling place anymore.

17.    Individual Plaintiff Andy Kim is a registered voter of DeKalb County. On or about May 24, 2020, he will leave Georgia and reside temporarily in Nevada

through the November 2020 elections for a term-limited job opportunity. He

considers DeKalb County, where his parents live, his home and will continue to do

so while temporarily residing in Nevada. During this time, he cannot vote in-

person without flying in from Nevada, so he intends to vote by mail and will be

forced to use postage. He does not want to use his own postage stamps to mail in

absentee ballots or applications because he believes that no one should have to pay

money to exercise their right to vote.

18.     Plaintiffs Gordon, Reid, and Kim will hereinafter be referred to as the

"Individual Plaintiffs."

19.     Defendant Brad Raffensperger, who is the Secretary of State and the

chief elections official of the State, is responsible for enacting elections statutes

and routinely issues guidance to the county election officials of all 159 counties on

various elections procedures and requirements. County election officials follow the

Secretary of State's guidance.

20.     The Defendant DeKalb County Board of Voter Registration &

Elections, and the similarly situated 159 county boards of registrars or absentee

ballot clerks,[1] require voters to affix postage on absentee ballots and applications, consistent with the Secretary of State's guidance.

21.     Defendants Anthony Lewis, Susan Motter, Dele Lowman Smith, Samuel E. Tillman, and Baoky N. Vu are Members of the DeKalb Board of Registration & Elections, reside in DeKalb County, and are being sued in their official capacities.

22.     Defendant Erica Hamilton is the Director of Voter Registration and Elections in DeKalb County, and is being sued in her official capacity. Defendant Hamilton is in charge of the day-to-day operations of running elections in DeKalb County, to the extent such power does not conflict with the Secretary of State's powers.

---

[1] Many counties combine their board of registrars and board of elections, which technically have separate responsibilities, into one entity called the "Board of Registration & Elections" (or some combination of the terms), responsible for both entities' duties. For the sake of simplicity, Plaintiffs use the statutory phrase "board of registrars" or "county registrars." This term will also be used to include "absentee ballot clerk." O.C.G.A. § 21-2-380.1. Also for the sake of simplicity, these terms include the members of such board and the top employee in charge of the day-to-day operations of running elections in that county.

## FACTUAL ALLEGATIONS

### The COVID Pandemic

23.     At stake is the sacred, constitutional right to vote. "No right is more precious in a free country than that of having a voice in the election of those who make the laws under which, as good citizens, we must live." Wesberry v. Sanders, 376 U.S. 1, 17 (1964).

24.     As discussed above, there is an ongoing pandemic that has made it unacceptable for most voters to cast a ballot in person this year. Voting in-person is simply not an option. Instead, people can only realistically vote if they do so by mail. But doing so requires the payment of an unconstitutional poll tax.

25.     COVID-19 is a highly contagious virus that spreads mainly from person-to-person through close contact with one another and through respiratory droplets when an infected person coughs or sneezes. Medical experts are learning more every day about the ease with which the COVID-19 spreads, including even just through breathing or talking. Studies on the pattern of illness indicate that people infected with the virus may be contagious even if they do not have any symptoms. COVID-19 can result in severe disease, including hospitalization, admission to an intensive care unit, and death. Top scientists in the Trump Administration recently estimated that COVID-19 could kill between 100,000 and

10

240,000 Americans and that this number would be much higher if Americans do not follow the strict social distancing guidelines.

26.     Although certain individuals may be more vulnerable to the effects of COVID-19, all evidence indicates COVID-19 is a highly virulent pathogen that threatens to infect any member of the public. Between February 1 and March 16, 2020, there were reported cases of COVID-19 in all age ranges in the United States. Georgia, too, has reported cases in all age ranges, with 60% under the age of 60. The World Health Organization has warned that they "are seeing more and more younger individuals who are experiencing severe disease" due to COVID-19. Similarly, the CDC has noted that "clinicians who care for adults should be aware that COVID-19 can result in severe disease among persons of all ages." As of March 16, 20 percent of those hospitalized due to COVID-19 in the United States were between the ages of 20 and 44.

27.     The CDC has issued national guidance telling the public to avoid public gatherings until at least May 15, 2020. Guidance from the Trump Administration, which was recently extended until April 30, 2020, advises against unnecessary travel and gatherings of over 10 people.

28.     In Georgia, Governor Kemp declared a public health State of emergency on March 16, 2020, and issued a statewide shelter in place order on

April 2, 2020. This Court has recently extended its order that no jurors or grand

jurors be summoned and all jury trials and grand jury proceedings be continued for

an additional 30 days until May 15, 2020.

29.     The number of confirmed COVID-19 cases in Georgia is growing

exponentially. Over the last week, the number of reported COVID-19 cases has

nearly doubled. As of the date of filing, there are at least 9,156 confirmed cases of

COVID-19 in Georgia; just six days ago, on April 1, there were only 4,638

reported cases. This number is expected to continue to grow.

## Postage Stamp Requirement

30.     Georgia allows a voter to cast an absentee ballot through the mail.

O.C.G.A. § 21-2-385. Notwithstanding the "absentee" moniker, any registered

voter may vote absentee regardless of whether they have an excuse for not being

present on Election Day. O.C.G.A. § 21-2-380.

31.     To vote by absentee ballot, a voter must first submit an absentee ballot

application via mail, fax, e-mail, or in-person. See O.C.G.A. § 21-2-381.

32.     If the application is sent by mail, the voter is responsible for affixing

postage. There do not appear to be any statutes or regulations that require

government officials to charge voters postage on absentee ballot applications.

33.     After the absentee ballot application is received by election officials and approved, voters are mailed the absentee ballot itself. Absentee ballots are mailed on or after 49 days before Election Day. O.C.G.A. § 21-2-384(a). The absentee ballot also comes with two envelopes: one for the absentee ballot itself, and the larger one which requires voters to sign an oath on the outside of that envelope. O.C.G.A. § 21-2-384(b)-(c). The smaller envelope containing the absentee ballot goes into the larger one, and the larger one is what voters mail in to cast an absentee ballot by mail. *Id.*

34.     Voters are required to affix their own postage when mailing in the absentee ballot, according to guidance issued by the Secretary of State.[2] There do not appear to be any statutes or regulations that require government officials to charge voters postage on absentee ballots.

35.     There is nothing especially mysterious or difficult about providing a postage prepaid envelopes or mailings to voters. Defendants have already done it because they are already required to do so for list maintenance purposes. See, e.g., O.C.G.A. § 21-2-233(b) (requiring officials to send certain voters a "postage prepaid, preaddressed return form" allowing voters to update their address);

---

[2] https://sos.ga.gov/admin/files/Absentee_Voting_A_Guide_for_Registered_Voters_2020.pdf

13

O.C.G.A. § 21-2-234(c) ("The confirmation notice shall be a postage prepaid, preaddressed return card"). And other states including Kansas, Iowa, and West Virginia, have been able to provide postage prepaid envelopes for mail-in absentee voters. *See* K.S.A. § 25-433; I.C.A. § 53.8; W. Va. Code § 3-3-5.

### Burdens on Marginalized Voters

36.     Requiring voters to pay money to vote is unconstitutional in and of itself regardless of whether or not a voter can afford it.

37.     But the postage requirement is still a significant problem for voters living on the margins.

38.     Many voters, especially lower-income voters, do not have postage stamps because they do not use them, or cannot afford to buy a book of stamps just for elections.

39.     Many voters do not have Internet access or credit cards to purchase stamps online, and they do not want to needlessly expose themselves to the COVID-19 virus to buy stamps at a post office.

40.     Many cannot even travel to a post office or other public place because they do not have cars, and there are no ride-sharing programs or public transportation in large parts of rural Georgia.

41.     Making matters worse, voters do not even know how much postage is needed. 55 cents may not be enough because ballots can sometimes be long and therefore heavy, and hardly anyone has stamp scales. Voters must therefore use extra and potentially unnecessary postage just to make sure their vote is counted.

42.     Furthermore, many voters like the elderly, those with physical disabilities, and out-of-town voters can only vote by mail, so it is extraordinarily difficult if not impossible for them to vote in person if they want to avoid paying for a postage stamp. Even for those who are able to vote in-person, taking time off work or childcare to travel to a polling place can still be challenging.

## **Plaintiff Class Action Allegations**

43.     Certifying a plaintiff class action is unnecessary because Defendants' unconstitutional practices can be enjoined without it.

44.     Nonetheless, to the extent the Court deems it necessary to join all voters as parties to this suit, Plaintiffs seek certification of a class of all registered voters, with the Individual Plaintiffs as class representatives, pursuant to Federal Rule of Civil Procedure 23(a) and 23(b)(1) or (b)(2).

45.     Joinder is impracticable because there are millions of registered voters. The Individual Plaintiffs are adequate and typical representatives because they are registered voters like everyone else in the class, and that is the only salient

fact that is necessary to resolve Plaintiffs' claim. All registered voters are subject to the same poll tax requirement that they spend money on postage to vote absentee by mail and can only avoid if they vote in person, which is at least materially burdensome for all voters. The class encompasses all registered voters because poll taxes are unconstitutional regardless of their amount, whether or not a voter can afford it, or whether a voter ends up paying for it. The class includes all voters regardless of how easy or difficult it is for them to vote in-person, because voting in-person is a material burden on any voter, and poll taxes remains an unconstitutional abridgment of the right to vote if alternative methods of voting are materially burdensome.

46.    Thus, the common question of law is whether requiring registered voters to buy postage to vote by mail is unconstitutional. Because the putative plaintiff class shares the common fact that all are registered voters, answering that single legal question resolves this case in one stroke.

47.    The plaintiff class should be certified (if necessary) because "prosecuting separate actions by or against individual class members would create a risk of . . . inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class." Fed. R. Civ. P. 23(b)(1)(A). Filing millions of separate,

identical lawsuits could result in incompatible standards of conduct throughout of

Georgia, where a person's voting rights differs depending on where they live and

who they are. Such an outcome is unacceptable in our democracy.

48.     The plaintiff class may be certified as a Rule 23(b)(1) class for the

independent reason that separate actions create a risk that "adjudications with

respect to individual class members [would], as a practical matter, [] be dispositive

of the interests of other [class] members." Fed. R. Civ. P. 23(b)(1)(B). Even within

the same county, adjudication of one DeKalb voter's claim would practically be

dispositive of other DeKalb voters', since the DeKalb Defendants will be unlikely

to tolerate treating one DeKalb voter differently from another in terms of postage.

Indeed, providing prepaid postage envelopes for one group of voters but not for

others in the same county is likely to be more bureaucratically cumbersome than

providing all DeKalb voters prepaid postage envelopes.

49.     The plaintiff class may also be certified (if necessary) because

Defendants have imposed the same postage requirement for mail-in voting on all

registered voters, so "final injunctive relief or corresponding declaratory relief is

appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). It would be

improper to exempt some voters but not others from paying the poll tax since poll

17

taxes are unconstitutional in all circumstances. Plaintiffs have not found any case striking down a poll tax only with respect to certain voters.

## Plaintiff Subclass Action Allegations

50.     To the extent necessary, Plaintiffs also seek certification of a subclass of voters, pursuant to Federal Rule of Civil Procedure 23(a) and 23(b)(1) or (b)(2), with the Individual Plaintiffs as the subclass representatives, of those for whom voting in-person is at least materially burdensome or requires unreasonable effort.

51.     The definition of this subclass currently includes all registered Georgia voters because of the pandemic, which generally makes it unreasonable for anyone, especially those that satisfy COVID risk factors like Plaintiff Reid,[3] to vote in-person right now. Plaintiffs reserve the right to seek definitional changes to any proposed or certified subclass based on changing circumstances.

52.     The Rule 23 requirements are satisfied by this subclass for the same reasons set forth in the Plaintiff Class Action Allegations *supra*.

## Defendant Class Action Allegations

53.     Certifying a defendant class action is unnecessary because an order enjoining the Secretary of State will have the effect of enjoining all 159 county

---

[3] *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html.

boards of registration.[4] The Secretary of State's Office routinely issues guidance to county registrars statewide, who follow the Office's guidelines.

54.    Nonetheless, to the extent the Court deems it necessary to join all the county boards of registrars as parties to this suit, Plaintiffs seek certification of a defendant class of all 159 Georgia county boards of registrars. Such a class would be represented by the DeKalb County Board of Voter Registration & Elections and the DeKalb individuals identified above, pursuant to Federal Rule of Civil Procedure 23(a) and 23(b)(1) or (b)(3).

55.    Joinder would be impracticable because there are 159 county boards of registrars. All county boards of registrars will share a common set of defenses available in this challenge to the constitutionality of requiring voters to pay postage when voting by mail. Because the county boards of registrars are simply following the Secretary of State's guidance, and because poll taxes are never justified on the basis of cost savings or administrative burdens, their defenses will not vary based on individual facts. For the same reasons, the claims of proposed class representative DeKalb County Board of Voter Registration & Elections and the individual DeKalb defendants will be typical of those of the other county boards of

---

[4] As noted above, the term "board of registration" includes the members of the board and the top employee in charge of running day-to-day operations in that particular county.

registrars. The DeKalb County Board of Voter Registration & Elections and the individual DeKalb defendants will also be an adequate representative of the class. There is no conflict between DeKalb County's board of registrars, their members, or their top elections director and other counties' boards, board members, or top elections directors, all of which operate independently. As the county board of registrars in charge of one of the largest counties in Georgia, they will also have greater resources and experience necessary to litigate this matter.

56.     The defendant class should be certified because "prosecuting separate actions by or against individual class members would create a risk of . . . inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class." Fed. R. Civ. P. 23(b)(1)(A). Filing 159 separate, identical lawsuits for each county could result in incompatible standards of conduct throughout of Georgia, where a person's voting rights differs depending on where they live. Such an outcome is unacceptable in our democracy.

57.     The defendant class may be certified as a Rule 23(b)(1) class for the independent reason that separate actions create a risk that "adjudications with respect to individual class members [would], as a practical matter, [] be dispositive of the interests of other [class] members." Fed. R. Civ. P. 23(b)(1)(B). County

elections officials do not lightly ignore court rulings applicable to other counties,

including declaratory and injunctive relief granted with respect to other counties,

even if they are not technically parties to the case. To the extent the Secretary

would play a role in effectuating such relief with respect to DeKalb, the Secretary

would likely issue guidance to all other counties to prevent confusing elections

officials.

58.     The class also qualifies as a Rule 23(b)(3) class, because "questions of

law or fact common to class members predominate over any questions affecting

only individual members, and that a class action is superior to other available

methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P.

23(b)(3). The question of liability is central to this case, if not the entirety of the

case itself.

59.     Other counties are unlikely to insist on individually controlling the

defense of separate actions, since county elections officials often want clarity more

than anything, and they may perceive separate lawsuits as adding to confusion. *Id.*

at 23(b)(3)(A).

60.     Plaintiffs are aware of only one lawsuit challenging the postage

requirement that has already begun, *id.* at 23(b)(3)(B), named *New Georgia

Project et al. v. Raffensperger*, No. 1:20-cv-1986 (N.D. Ga.), which was filed

21

recently on May 8, 2020. In addition to challenging the postage requirement, the lawsuit also challenges Georgia's absentee applicant notification process, election day receipt deadline, and voter assistance prohibitions. That lawsuit also sues the DeKalb board of registration, but it also sues those of Fulton, Cobb, Gwinnett, Chatham, Fayette, Clayton, Columbus-Muscogee, Douglas, Albany-Dougherty, Rockdale, Newton, Richmond, Macon-Bibb, Athens-Clarke, and Forsyth. The lawsuit does not bring claims on behalf of a proposed plaintiff class or a proposed defendant class.

61.     Concentrating the litigation of voting rights claims in the Northern District of Georgia is desirable because DeKalb has greater resources to manage any discovery issues and the Secretary of State is based in this district. *Id.* at 23(b)(3)(C). Lastly, managing a class action is unlikely to be difficult, because discovery of how the other 158 counties operate is unlikely to be relevant, at least based on what Plaintiffs know so far. *Id.* at 23(b)(3)(D). While some counties benefit financially more than others from a postage requirement, Plaintiffs' claims currently do not depend on how much money is saved from a postage requirement.

## CAUSES OF ACTION

### COUNT ONE

*Requiring voters to pay for their own postage is an unconstitutional poll tax in violation of the Twenty-Fourth and Fourteenth Amendments*

22

62.     Plaintiffs reallege and incorporate by reference the allegations contained in the preceding paragraphs.

63.     The Twenty-Fourth Amendment provides: "The right of citizens of the United States to vote in any primary or other election for President or Vice President, for electors for President or Vice President, or for Senator or Representative in Congress, shall not be denied or abridged by the United States or any State by reason of failure to pay any poll tax or other tax."

64.     The Equal Protection Clause of the Fourteenth Amendment provides: "No state shall make or enforce any law which shall . . . deny to any person within its jurisdiction the equal protection of the laws."

65.     Both amendments prohibit the government from imposing a poll tax. *See Harman v. Forssenius*, 380 U.S. 528 (1965); *Harper v. Va. State Bd. of Elect.*, 383 U.S. 663 (1966).

66.     Requiring voters to spend money on their own postage to submit an absentee ballot by mail imposes an unconstitutional poll tax in violation of these Amendments. This poll tax constitutes an "abridgment" of the right to vote because while voters can avoid the poll tax by voting in-person, voting in-person is still at least "material requirement" for all voters. *Harman*, 380 U.S. at 541.

67.     For the same reasons, requiring voters to spend money on postage to mail in absentee ballot applications is also an unconstitutional poll tax.

## COUNT TWO

*Requiring voters to pay for their own postage imposes an unjustifiable burden on the right to vote in violation of the First and Fourteenth Amendments*

68.     Plaintiffs reallege and incorporate by reference the allegations contained in the preceding paragraphs.

69.     The First and Fourteenth Amendments protect the fundamental right to vote. *See Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983); *Burdick v. Takushi*, 504 U.S. 428, 434 (1992). Pursuant to the *Anderson-Burdick* line of cases, the government cannot infringe on the right to vote without adequate justification, and the greater the character and magnitude of the infringement, the stronger the justification must be. Even a slight burden must be adequately justified.

70.     Here, requiring voters to spend money in order to vote by mail is at least a "slight" burden on all voters (and a severe one for some voters). Even if the burden is "slight," the government has no legitimate interest in forcing voters to pay for postage because wealth has nothing to do with a voter's qualifications.

71.     To the extent that any administrative burden on the State ever justifies making voters to pay to vote, the burden is minimal because the State already

knows how to provide prepaid postage returnable envelopes as it is required in other contexts. *See* O.C.G.A. § 21-2-233(b); O.C.G.A. § 21-2-234(c).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand the following:

a)  That this Court issue a judgment declaring that the requirement that voters affix their own postage to mail-in absentee ballots and mail-in absentee ballot applications is unconstitutional;

b)  That this Court issue a preliminary injunction and permanent injunction enjoining Defendants from telling and requiring voters to affix their own postage for absentee ballots and absentee ballot applications and requiring Defendants to provide prepaid postage returnable envelopes for absentee ballots;

c)  That Plaintiffs be awarded attorneys' fees under 42 U.S.C. § 1988;

d)  That all costs of this action be taxed against Defendants; and

e)  That the Court award any additional or alternative relief as may be deemed appropriate under the circumstances.

Respectfully submitted,

this May 11, 2020

**<u>Sean Young</u>**
Attorney Bar Number: 790399
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION OF
GEORGIA, INC.

P.O. Box 77208
Atlanta, GA 30357
Telephone: (678) 981-5295
Email: syoung@acluga.org

Sophia Lin Lakin*
Dale E. Ho*
AMERICAN CIVIL LIBERTIES
UNION
125 Broad Street, 18th Floor
New York, NY 10004
Telephone: 212-519-7836
Email: slakin@aclu.org
dho@aclu.org

Attorneys for Plaintiffs

*Pro hac vice application forthcoming

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 11, 2020, I electronically filed the foregoing

with the Clerk of Court using the CM/ECF system. The Complaint will be served

on the above-named Defendants.

Date: May 11, 2020

**Sean Young**
Attorney Bar Number: 790399
Attorney for Plaintiffs
AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF GEORGIA, INC.
P.O. Box 77208
Atlanta, GA 30357
Telephone: (678) 981-5295
Email: syoung@acluga.org