[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 20-13414

_____

D.C. Docket No. 1:20-cv-01489-AT

BLACK VOTERS MATTER FUND,
MEGAN GORDON,
PENELOPE REID,

                                                          Plaintiffs-Appellants,

ANDY KIM,

                                                          Plaintiff,

versus

SECRETARY OF STATE FOR THE STATE OF GEORGIA,
DEKALB COUNTY BOARD OF REGISTRATION & ELECTIONS,
ANTHONY LEWIS,
SUSAN MOTTER,
DELE LOWMAN SMITH, et al.,

                                                        Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(August 27, 2021)

Before BRANCH, GRANT, and ED CARNES, Circuit Judges.

BRANCH, Circuit Judge:

This appeal requires us to consider whether either the Twenty-Fourth Amendment or the Equal Protection Clause of the Fourteenth Amendment requires Georgia to pay for postage for voters who choose to return their absentee ballots by mail. Black Voters Matter Fund, LLC, Penelope Reid, and Megan Gordon ("Plaintiffs") ask us to declare Georgia's statutory framework for absentee voting by mail—which gives voters an option to return an absentee ballot by mail but does not provide for the payment of their postage to do so—unconstitutional. The Plaintiffs argue that by not covering the cost of postage, Georgia is imposing an unconstitutional "poll tax" or fee on some absentee voters. We hold that the fact that absentee voters in Georgia who decide to vote by mail must pay their own postage is not a "tax" or unconstitutional fee on voting. Accordingly, we affirm the district court's decision to dismiss the Plaintiffs' constitutional claims.

2

### I.   Background

**A. Georgia Voting Statutes[1]**

Georgia voters cast their ballots in two main ways—in person or through the absentee process. In-person voters can vote on election day or during a period of advance voting. O.C.G.A. § 21-2-385(d)(1). Absentee voters, after applying for and receiving an absentee ballot, are responsible for returning their ballots to the county election office. O.C.G.A. §§ 21-2-216(a) (elector's qualifications); 21-2-381 (application for absentee ballot); 21-2-385 (voting by absentee electors). Those voters can choose to return their ballots directly to the county election office, deposit them into a ballot drop box, or mail them to the county election office. O.C.G.A. §§ 21-2-385(a); 21-2-382(c)(1).[2] The statute requires neither the state of Georgia nor county governments to cover the cost of postage for absentee voters who choose the third option—mailing their ballots.[3]

---

[1] After the parties briefed this case, Georgia passed the "Election Integrity Act of 2021" to reform several of Georgia's voting procedures. 2021 Ga. Laws 9 ("SB 202"). The parties assert, and we agree, that nothing in the Act affects the issues in this appeal.

[2] In response to the COVID-19 pandemic, the State Election Board adopted a temporary emergency rule that allowed absentee voters to return their ballots to absentee ballot drop boxes. Ga. Comp. R. & Regs. 183-1-14-.08. Georgia's recently passed Election Integrity Act codifies the use of absentee ballot drop boxes and further requires all counties to have at least one such drop box. 2021 Ga. Laws 9; O.C.G.A. § 21-2-382(c)(1).

[3] The United States Postal Service ("USPS") requires voters to affix postage to absentee ballots (with some exceptions) to mail them, but, as was noted in the district court proceeding, USPS's policy is to inform its employees to deliver official election mail—including absentee ballots—even if it contains insufficient or no postage. United States Postal Service, *2014 Election and Political Mail Update*, Postal Bulletin 22391 (June 12, 2014),

## B. Lawsuit

The Plaintiffs filed suit to challenge Georgia's statutory framework for absentee voting, alleging that requiring voters who choose to return their absentee ballots by mail to pay for their own postage is a poll tax in violation of the Twenty-Fourth Amendment and the Equal Protection Clause of the Fourteenth Amendment.[4] The Plaintiffs sued the Georgia Secretary of State, the DeKalb County Board of Registration & Elections, and other DeKalb County elections officials ("Defendants") seeking a declaratory judgment that Georgia's statutory framework for absentee voting by mail is unconstitutional because it amounts to a poll tax and an impermissible fee on voting and seeking injunctive relief requiring Defendants to provide postage for absentee ballots.[5]

---

https://about.usps.com/postal-bulletin/2014/pb22391/html/kit.htm (explaining that "Postal Service employees are instructed that unpaid absentee balloting materials must never be returned to the voter for additional postage. Postage is collected from the election office upon delivery or at a later date").

[4] The individual plaintiffs, Reid and Gordon, are Georgia registered voters who do not want to vote in person because of the COVID-19 pandemic and do not want to use their own stamps to mail in absentee ballots. Black Voters Matter Fund is an organization that works to increase voter registration, turnout, and advocates for policies to expand voting access.

The Plaintiffs also sought to certify a class action to challenge Georgia's absentee voting framework, but the district court reserved ruling on class certification, and the class certification issue is not before us on appeal.

[5] Plaintiffs also sought a preliminary injunction to require the Defendants to cover the cost of postage in the 2020 general election. The district court denied Plaintiffs' request, and Plaintiffs did not appeal that decision.

The Defendants moved to dismiss, arguing, among other things, that Georgia's statutory framework for absentee voting is not a state poll tax or unconstitutional fee on voting. They also argued that USPS's policy of delivering absentee ballots even if they have insufficient postage further defeated Plaintiffs' claims.

The district court granted the Defendants' motions to dismiss because it determined that the postage requirement is not a poll tax under the Twenty-Fourth Amendment or an unconstitutional fee on voting prohibited by the Equal Protection Clause. The court found that "[t]he fact that any registered voter may vote in Georgia on election day without purchasing a stamp, and without undertaking any 'extra steps' besides showing up at the voting precinct and complying with generally applicable election regulations" necessitated its conclusion. The court acknowledged that "voting in person is materially burdensome for a sizable segment of the population, both due to the COVID-19 pandemic and for the elderly, disabled, or those out of town," however, the court concluded that these concerns are not "the specific evils the Twenty-Fourth Amendment was meant to address."[6] Plaintiffs appealed.

---

[6] The district court heard argument on USPS's policy of informing its employees to deliver election mail with insufficient or no postage, but it did not dismiss the case on this ground because it:

## II.     Standard of Review

"We review *de novo* the [d]istrict [c]ourt's order dismissing [Plaintiffs'] complaint for failure to state a claim." *Estrada v. Becker*, 917 F.3d 1298, 1302 (11th Cir. 2019). "We assume the factual allegations of the complaint are true, and we construe them in the light most favorable to appellants. We do not assume that any legal conclusions are true." *Id.* (internal citation omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

---

was not presented with a certified copy of the policy, . . . did not receive any evidence about the statewide compliance rate with this policy, and . . . heard credible testimony that Plaintiff Black Voters Matter Fund was concerned that presenting this option to voters would run the risk of confusion or otherwise harm its credibility.

The Defendants urge us on appeal to affirm the district court's dismissal of this case based on USPS's policy, but we decline to do so because the USPS policy does not resolve the issues in this appeal. The USPS policy is not, as the Defendants frame it, a policy that requires delivery of absentee ballots without postage. Rather, the policy simply says that "Postal Service employees are instructed" that absentee ballots containing insufficient or no postage should not be "returned to the voter for additional postage." United States Postal Service, *2014 Election and Political Mail Update*, Postal Bulletin 22391 (June 12, 2014), https://about.usps.com/postal-bulletin/2014/pb22391/html/kit.htm. Because, as the district court noted, there is no evidence that USPS employees routinely abide by this instruction, the policy does not conclusively resolve the issues in this case.

### III.  Discussion

The Plaintiffs argue on appeal that the district court erred in dismissing their claims because they stated a valid claim under both the Twenty-Fourth Amendment and the Fourteenth Amendment's Equal Protection Clause.

**A. Twenty-Fourth Amendment Claim**

The Twenty-Fourth Amendment to the United States Constitution, ratified in 1964, provides:

> The right of citizens of the United States to vote in any primary or other election for President or Vice President, for electors for President or Vice President, or for Senator or Representative in Congress, shall not be denied or abridged by the United States or any State by reason of failure to pay any poll tax or other tax.

U.S. Const. amend. XXIV, § 1.

The Plaintiffs argue that Georgia's statutory framework for absentee voting by mail violates the Twenty-Fourth Amendment because postal fees are a "tax," and by not paying for postage, Georgia "abridges" the electorate's right to vote "by reason of" their "failure to pay" that tax.

We must first determine whether the requirement that an absentee voter pay for postage is, in fact, a "poll tax or other tax" that abridges Georgia voters' right to vote in federal elections. *Harman v. Forssenius*, 380 U.S. 528, 540 (1965) ("[N]o State [can] condition the federal franchise upon payment of a poll tax.").

Because paying for postage on a mail-in ballot is not a tax, Plaintiffs did not state a claim for a violation of the Twenty-Fourth Amendment.

While determining the outer parameters of what constitutes a "tax" is difficult in some cases, the term indisputably includes a "monetary exaction[] imposed by the government." *Jones v. Governor of Fla.*, 975 F.3d 1016, 1037 (11th Cir. 2020) (en banc); *see id.* at 1038–39 (analyzing the distinction between a penalty and a tax); *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 561–74 (2012) (determining whether the Patient Protection and Affordable Care Act of 2010's individual mandate fell under Congress's taxing power); *United States v. La Franca*, 282 U.S. 568, 572 (1931) (defining a "tax" as "an enforced contribution to provide for the support of government"); Black's Law Dictionary 1628 (4th ed. 1951) (defining "tax" as "to enact or declare that a pecuniary contribution shall be made by the persons liable, for the support of the government").  The novel theory that Plaintiffs ask us to adopt—that Georgia imposes a "tax" by not paying for a service (postage) to assist voters who choose to vote through the absentee process and then choose to return their ballot by mail— simply does not hold water.

Georgia voters, without paying any money, have the option to vote in person, bring their absentee ballot to the county election office, or drop their ballot in a county drop box.  O.C.G.A § 21-2-385.  Further, even those voters who choose

to mail in their absentee ballots buy postage from the United States Postal Service and the proceeds from postage sales are paid to USPS—not the state of Georgia—to account for the costs associated with delivering the mail. 39 U.S.C. § 3622(c); *see also* 39 U.S.C. § 101(d) ("Postal rates shall be established to apportion the costs of all postal operations to all users of the mail on a fair and equitable basis."). These voters are buying a service (the delivery of their mail) from USPS, and Georgia does not receive any money from those sales. *Nat'l Fed'n of Indep. Bus.*, 567 U.S. at 564 ("[T]he essential feature of any tax" is that "[i]t produces at least some revenue for the Government.").[7]

The Plaintiffs, citing our *en banc* decision in *Jones*, repeatedly assert—in briefing and at oral argument—that postal fees must be a "tax" because they are not a "penalty." The Plaintiffs' argument plainly misrepresents our language in *Jones*. In *Jones*, we said "if a government exaction *is* a penalty, it *is not* a tax." 975 F.3d at 1038 (emphasis added). The Plaintiffs say we said, however, that "if a government exaction *is not* a penalty, it *is* a tax." The Plaintiffs' misquote of *Jones*

---

[7] Plaintiffs argue that it makes no difference that Georgia is not receiving any revenue from the postage sales because USPS—a federal government entity—is. They suggest Georgia's framework is a poll tax "regardless of whether Defendants condition the right to vote on the payment of a tax to Defendants, the United States, or some other governmental entity." Even if Plaintiffs' novel theory that a state could violate the Twenty-Fourth Amendment by requiring the payment of a tax to a different governmental entity held true, Georgia's statute allowing absentee voting by mail still is not a "tax" because (1) Georgia is not compelling any voter to buy postage, and (2) those voters who choose to buy postage are paying for a service—the delivery of their mail—rather than being compelled to contribute "to provide for the support of government." *La Franca*, 282 U.S. at 572.

implies (and Plaintiffs repeatedly assert) that every payment a citizen makes to the government falls into one of two buckets: penalty or tax. We did not say this in *Jones*, and it is clearly not the case. While the cost of postage "is not a 'penalty' to punish unlawful behavior," that by no means automatically renders it a tax. The Plaintiffs' misquote of *Jones* is not only incorrect and disingenuous—it is completely illogical.

The premise underlying Plaintiffs' argument—that any payment a citizen makes to the government must be either a penalty or a tax—is demonstrably false because some payments that citizens make to the government are certainly neither penalties nor taxes. For instance, a citizen who receives electricity from the Tennessee Valley Authority is not being penalized or taxed when she pays her monthly electricity bill. Similarly, a citizen who hands over money to ride Amtrak is not paying a penalty or a tax, but a fare. *See Empress Casino Joliet Corp. v. Balmoral Racing Club, Inc.*, 651 F.3d 722, 730 (7th Cir. 2011) (en banc) ("Fees for products (people buy electricity from public utilities) and bona fide user fees (a toll for crossing a bridge, for example) are not 'taxes' in either lay or legal lingo."). And a citizen who pays the government a fee to enter a state park or who buys a souvenir at the gift shop on his way out is not paying a penalty or a tax, but an entry fee or a purchase price. *See Hill v. Kemp*, 478 F.3d 1236, 1246 (10th Cir. 2007) (Gorsuch, J.) (contrasting a "classic tax" with a "classic fee" which "might

be an entry charge imposed by a state park authority to regulate park usage and support only the upkeep of the park"); *ACLU of Tenn. v. Bredesen*, 441 F.3d 370, 374 (6th Cir. 2006) (noting that "the purchase of government bonds, or the purchase of a souvenir at a state park gift store" are "purchase payments [that] can hardly be termed 'taxes' as opposed to ordinary payments on voluntary contracts"). In each of these instances, and many more, the citizen pays the government for a good or service, just as those who buy stamps are paying the government for its service in delivering the envelopes to which they attach those stamps. *See* Thomas Cooley, *Treatise on the Law of Taxation* 5 (3d ed. 1903) ("Charges for services rendered, or for conveniences furnished, are in no sense taxes.").[8]

The Plaintiffs' Twenty-Fourth Amendment argument fails because the cost of a postage stamp in this context is neither a penalty nor a tax but is the cost of a

---

[8] This understanding of the distinction between a tax and other forms of payment to the government remains true in the Twenty-Fourth Amendment context. At the time of the Amendment's ratification, in 1964, it was widely known, established, and understood that payments to the government for goods and services were not a "tax." That recognition was engrained in federal law. *See, e.g.*, *Packet Co. v. Keokuk*, 95 U.S. 80, 84 (1877) ("But a charge for services rendered or for conveniences provided is in no sense a tax or a duty."). It was also established in the law of many states. *See, e.g.*, *Leggett v. Mo. State Life Ins. Co.*, 342 S.W.2d 833, 875 (Mo. 1960) (en banc) ("Fees or charges prescribed by law to be paid by certain individuals to public officers for services rendered in connection with a specific purpose ordinarily are not taxes . . . ."); *Gunby v. Yates*, 102 S.E.2d 548, 550–51 (Ga. 1958) ("As a general rule, fees prescribed for public officers are not taxes but compensation for particular services, unless the object and purpose of the charge is to provide general revenue rather than compensation for services rendered."); *Holman v. City of Dierks*, 233 S.W.2d 392, 393 (Ark. 1950) ("While the ordinance refers to this levy as a tax, it is actually not a tax but a charge for services to be rendered. The city proposes to spray the property of its citizens and to charge the cost of this operation against those who receive its benefits. Such a fee for the performance of a service is not taxation.").

service—voters can pay money to have a postal carrier transport their ballot to the county election office instead of dropping it off themselves. While the term "tax" may be "broad," it, at a minimum, requires a "monetary exaction[] imposed by the government." *Jones*, 975 F.3d at 1037. Plaintiffs have failed to allege such an exaction in this case, and thus the district court properly dismissed their Twenty-Fourth Amendment claim.[9]

### B. Equal Protection Clause Claim

The Equal Protection Clause provides that no "State" shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. Because the Twenty-Fourth Amendment only applies to federal elections, the Supreme Court, in *Harper v. Virginia State Board of Elections*, analyzed the constitutionality of a poll tax in a state election under the Equal Protection Clause. 383 U.S. 663, 666 (1966). There, the Supreme Court held that a state violates the Equal Protection Clause "whenever it makes the affluence of the voter or payment of any fee an electoral standard." *Id.*; *Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181, 189 (2008) (plurality opinion) ("[U]nder the standard applied in *Harper*, even rational restrictions on the right to vote are invidious if they are unrelated to voter qualifications."); *Jones*, 975 F.3d at 1030–

---

[9] Because we conclude that Georgia has not imposed a "tax," we need not reach the Plaintiffs' arguments concerning whether Georgia's absentee voting framework "abridges" the right to vote "by reason of" a voter's failure to pay a tax.

31. In *Harper*, the Court considered the constitutionality of Virginia's $1.50 poll tax imposed on voters in a state election. The Court explained that the Equal Protection Clause "restrains the States from fixing voter qualifications which invidiously discriminate." 383 U.S. at 666. Because poll taxes bear "no relation" to voter qualifications, the Court concluded that Virginia had "introduce[d] a capricious or irrelevant factor" by requiring voters to pay a $1.50 poll tax and invalidated the tax. *Id.* at 666, 668.

The Plaintiffs argue that they stated a valid Equal Protection Clause claim under *Harper* because Georgia's decision not to pay for postage amounts to a poll tax or fee that is not related to a voter's qualifications and discriminates against persons who do not vote in person. This argument fails because Georgia has not made the "affluence of the voter or payment of any fee an electoral standard." *Id.* at 666. Georgia does not require voters to pay a poll tax or fee as part of their qualifications to be eligible to vote, so it has not made the payment of any fee or poll tax an "electoral standard." *Id.* at 666–70.

Similarly, to the extent the Plaintiffs ask us to analyze their Equal Protection Clause claim as discriminating against different types of absentee voters, that argument likewise fails. The Plaintiffs argue that they have a statutory "right" to vote absentee by mail and Georgia's absentee voting framework is unconstitutionally discriminating against absentee-by-mail voters for their failure

13

to pay postage fees. The Plaintiffs rely on the Supreme Court's decision in *American Party of Texas v. White*, 415 U.S. 767 (1974), to support their argument. In *White*, the Supreme Court—relying on its decision in *O'Brien v. Skinner*—recited the proposition that "permitting absentee voting by some classes of voters and denying the privilege to other classes of otherwise qualified voters in similar circumstances, without affording a comparable alternative means to vote, is an arbitrary discrimination violative of the Equal Protection Clause." 415 U.S. at 795 (citing *O'Brien v. Skinner*, 414 U.S. 524, 529 (1974)).

But *White* is inapplicable here. Georgia's absentee voting framework is not the type of "arbitrary discrimination violative of the Equal Protection Clause" at issue in *White* and *O'Brien* because Georgia is not denying the right to vote to any voters. Accordingly, we reject the Plaintiffs' argument that because Georgia has given voters the option to mail in absentee ballots, O.C.G.A. § 21-2-385, it is discriminating against various groups of absentee voters. *See Brnovich v. Democratic Nat'l Comm.*, 141 S. Ct. 2321, 2338 (2021) ("After all, every voting rule imposes a burden of some sort. Voting takes time and, for almost everyone, some travel, even if only to a nearby mailbox."); *see also Greater Birmingham Ministries v. Sec'y of State for State of Ala.*, 992 F.3d 1299, 1335 (11th Cir. 2021) (explaining, in a different context, that giving a voter an additional option to

accomplish a prerequisite to voting "actually increases the opportunities" for voters to cast ballots rather than constituting an impermissible voting test or device).

*   *   *

While voting often involves incidental costs like transportation, parking, child care, taking time off work, and—for those who choose to vote absentee by mail—the cost of a postage stamp, those incidental costs do not mean that Georgia has imposed an unconstitutional poll tax or fee on its voters.[10]  Accordingly, we affirm the district court's dismissal of Plaintiffs' claims.

**AFFIRMED.**

---

[10] We note that the Plaintiffs' claims border on the frivolous.  At this time, however, we are not imposing sanctions.

# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

August 27, 2021

MEMORANDUM TO COUNSEL OR PARTIES

Appeal Number: 20-13414-AA
Case Style: Black Voters Matter Fund, et al v. Secretary of State, et al
District Court Docket No: 1:20-cv-01489-AT

**This Court requires all counsel to file documents electronically using the Electronic Case Files ("ECF") system, unless exempted for good cause. Non-incarcerated pro se parties are permitted to use the ECF system by registering for an account at www.pacer.gov. Information and training materials related to electronic filing, are available at www.ca11.uscourts.gov.** Enclosed is a copy of the court's decision filed today in this appeal. Judgment has this day been entered pursuant to FRAP 36. The court's mandate will issue at a later date in accordance with FRAP 41(b).

The time for filing a petition for rehearing is governed by 11th Cir. R. 40-3, and the time for filing a petition for rehearing en banc is governed by 11th Cir. R. 35-2. Except as otherwise provided by FRAP 25(a) for inmate filings, a petition for rehearing or for rehearing en banc is timely only if received in the clerk's office within the time specified in the rules. Costs are governed by FRAP 39 and 11th Cir.R. 39-1. The timing, format, and content of a motion for attorney's fees and an objection thereto is governed by 11th Cir. R. 39-2 and 39-3.

Please note that a petition for rehearing en banc must include in the Certificate of Interested Persons a complete list of all persons and entities listed on all certificates previously filed by any party in the appeal. See 11th Cir. R. 26.1-1. In addition, a copy of the opinion sought to be reheard must be included in any petition for rehearing or petition for rehearing en banc. See 11th Cir. R. 35-5(k) and 40-1 .

Counsel appointed under the Criminal Justice Act (CJA) must submit a voucher claiming compensation for time spent on the appeal no later than 60 days after either issuance of mandate or filing with the U.S. Supreme Court of a petition for writ of certiorari (whichever is later) via the eVoucher system. Please contact the CJA Team at (404) 335-6167 or cja_evoucher@ca11.uscourts.gov for questions regarding CJA vouchers or the eVoucher system.

Pursuant to Fed.R.App.P. 39, costs taxed against appellants.

Please use the most recent version of the Bill of Costs form available on the court's website at www.ca11.uscourts.gov.

For questions concerning the issuance of the decision of this court, please call the number referenced in the signature block below. For all other questions, please call T. L. Searcy, AA at (404) 335-6180.

Sincerely,

DAVID J. SMITH, Clerk of Court

Reply to: Jeff R. Patch
Phone #: 404-335-6151

OPIN-1A Issuance of Opinion With Costs